THE STATE OF OHIO, APPELLEE, *v.* LEROY, APPELLANT.

[Cite as State v. Leroy (1972), 30 Ohio St. 2d 138.]

(No. 71-161—Decided May 17, 1972.)

140

*Mr. George C. Smith,* prosecuting attorney, and *Mr. C. William Brownfield, Jr.,* for appellee.

*Messrs. Tyack, Scott & Colley* and *Mr. Thomas M. Tyack,* for appellant.

CORRIGAN, J. The solitary feature of this appeal brings into focus the issue as to whether or not our decision in *State* v. *Sims, supra* (27 Ohio St. 2d 79), is to be given retroactive application to the cause under review, which dates back to June 1964, almost eight years after this appellant's conviction on three counts of armed robbery.

The syllabus in *Sims* states the holding of this court and applies only to the factual pattern in that case. That syllabus reads:

"In the absence of evidence in the record upon which

it could be determined that an indigent convicted defendant knowingly and intelligently waived his right of direct appeal and his right to court-appointed counsel for direct appeal prior to the expiration of the time in which such an appeal could be taken, a Court of Appeals must make such a factual determination before it dismisses a motion for leave to appeal."

In *Sims*, the defendant was represented in the trial by court-appointed counsel, indicating his indigency. When he filed his motion for leave to appeal within six months of the judgment of conviction, he asserted his indigency to the Court of Appeals by affidavit. In the case before us, the defendant obviously was not indigent at the trial because he was represented by privately retained counsel. He asserts in his motion for leave to appeal, over six years later, that he endeavored to negotiate with his trial attorney for an appeal at the time of judgment in the trial court in 1964 but was unable to borrow any money to pay him therefor. It must be concluded that he knew at that time about appeal rights, from whatever source the information or advice was derived. There is absolutely nothing before us to show that defendant, Leroy, told the trial judge, after his conviction, that he was indigent or that he desired to appeal.

Although the rule stated in *Sims* in 1971 is sound and just, we do not believe that the United States Constitution required an Ohio Common Pleas judge in 1964 to find out whether Willis Leroy, who had just been convicted by a jury on three counts of armed robbery and who had been represented at trial by retained counsel, wished to prosecute an appeal and was no longer able to afford a lawyer to take such an appeal on his behalf.

*Sims*, in our opinion, is inapplicable to our instant factual pattern; likewise, *Douglas* v. *California* (1963), 372 U. S. 353.

Let us examine briefly the doctrine of *Douglas*, which was handed down in 1963. In that case, defendants were convicted in a California state court of 13 felonies and

sentenced to imprisonment. Exercising their only appeal as of right, they appealed to an intermediate Court of Appeals, and, being indigent, applied to that court for appointment of counsel to assist them in the appeal. In accordance with a state rule of criminal procedure, that court made an *ex parte* examination of the record, determined that appointment of counsel for petitioners would not be "of advantage to the defendant or helpful to the appellate court" and denied appointment of counsel. Petitioners' appeal was heard without assistance of counsel and their convictions were affirmed. The California Supreme Court denied a discretionary review. The United States Supreme Court held that where the merits of the one and only appeal an indigent has of right are decided without benefit of counsel in a state criminal case, there has been a discrimination between the rich and the poor which violates the Fourteenth Amendment.

In the majority opinion written by Douglas, J., that court said, at page 354: "Although several questions are presented in the petition for certiorari, *we address ourselves to only one of them. The record shows that petitioners requested, and were denied, the assistance of counsel on appeal, even though it plainly appeared they were indigents.*" (Emphasis added.)

Later, on page 355, the opinion states: "*Here the issue is whether or not an indigent shall be denied the assistance of counsel on appeal.*" (Emphasis added.) And, of course, *Douglas* is retroactive in effect, under *Smith* v. *Crouse* (1964), 378 U. S. 584, but that certainly does not mean any more than that the decision is retroactive in a situation such as was there presented.[1]

---

[1] The legal conclusions sought to be dogmatized in footnote No. 8 of the dissenting opinion, herein, must have had origin *in nubibus* or perhaps *in gremio magistratus* inasmuch as they are contrary to the established doctrine of the United States Supreme Court that an "opinion must be read as a whole in view of the facts on which it was based. The facts are the foundation of the entire structure, which cannot with safety be used without reference to the facts."

The Supreme Court of the United States has denied retroactivity in connection with many constitutional rules of criminal procedure, under the general principle that "the court may in the interest of justice make the rule prospective * * * where the exigencies of the situation require such an application * * *." *Johnson* v. *New Jersey* (1966), 384 U. S. 719, 726-727. For example, *Linkletter* v. *Walker* (1965), 381 U. S. 618, refused retroactive application to *Mapp* v. *Ohio* (1961), 367 U. S. 643 (illegal search and seizure, Fourth Amendment); *Tehan* v. *United States, ex rel. Shott* (1966), 382 U. S. 406, to *Griffin* v. *California* (1965), 380 U. S. 609 (comment on failure to take the witness stand, Fifth Amendment); *Johnson* v. *New Jersey, supra,* to both *Escobedo* v. *Illinois* (1964), 378 U. S. 478, and *Miranda* v. *Arizona* (1966), 384 U. S. 436; *Stovall* v. *Denno* (1967), 388 U. S. 293, to *United States* v. *Wade* (1967), 388 U. S. 218 (lineup identification, Fifth and Sixth Amendments), and *Gilbert* v. *California* (1967), 388 U. S. 263; *Desist* v. *United States* (1969), 394 U. S. 244, refused retroactive application to *Katz* v. *United States* (1967), 389 U. S. 347 (electronic eavesdropping as illegal search and seizure, Fourth Amendment); *DeStefano* v. *Woods* (1968), 392 U. S. 631, to *Duncan* v. *Louisiana* (1968), 391 U. S. 145 (right to jury trial—serious offenses, Sixth Amendment), and *Bloom* v. *Illinois* (1968), 391 U. S. 194 (right to trial by jury—serious criminal contempt, Sixth Amendment); *Williams* v. *United States* (1971), 28 L. Ed. 2d 388, to *Chimel* v. *California* (1969), 395 U. S. 752 (unreasonable search and seizure, Fourth Amendment); and *Mackey* v. *United States* (1971), 28 L. Ed. 2d 404, refused retroactive application to *Marchetti* v. *United States* (1968), 390 U. S. 39, and *Grosso* v. *United States* (1968), 390 U. S. 62 (self-incrimination; failure to register as a gambler, Fifth Amendment).

In *Stovall* v. *Denno, supra* (388 U. S. 293), at page 297, the court set forth the following criteria guiding resolution of the question of whether a case, which overturns prior doctrines in the area of criminal law, should be applied only prospectively:

144

"* * * (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."

All three factors favor prospective application of the rule stated in *State* v. *Sims, supra* (27 Ohio St. 2d 79).

The case of *United States, ex rel. Smith,* v. *McMann* (1969), 417 F. 2d 648, seems to be closest to our fact situation, but the court in that case, upon appeal from a denial of a habeas corpus writ, found that Smith was indigent at the time sentence was imposed. We have no such finding before us.

Worthy of mention also is the case of *Adams* v. *Illinois* (1972), 31 L. Ed. 2d 202, decided March 6, 1972. In *Adams,* a decision of the Illinois Supreme Court, affirming the lower court's overruling of a motion to dismiss the indictment because of that court's failure to appoint counsel to represent defendant at a preliminary hearing in 1967, was upheld. Defendant's conviction was affirmed by the Illinois Supreme Court on the ground that *Coleman* v. *Alabama* (1970), 399 U. S. 1, in which the holding was that a preliminary hearing is a critical stage of the criminal process at which the accused is constitutionally entitled to assistance of counsel, did not have retroactive application, namely, to preliminary hearings conducted prior to June 26, 1970. Conversely, *Coleman* is to be prospective only in application.

Retrospective application of law is proper when the principle to be applied goes to the "fairness of the trial—the very integrity of the fact finding process." *Linkletter* v. *Walker, supra* (381 U. S. 618, 639). See, also, *Roberts* v. *Russell* (1968), 392 U. S. 293; *McConnell* v. *Rhay* (1968), 393 U. S. 2; and *Berger* v. *California* (1969), 393 U. S. 314.

No error was here alleged which attacked "the very integrity of the fact finding process." *Linkletter* v. *Walker, supra* (381 U. S. 618).

With full cognizance of the United States Supreme

Court's guidelines, as established in *Linkletter, supra*, and of the trifurcated test described in *Stovall, supra*, it is our opinion that this court's decision in *State* v. *Sims* should not be given retroactive application to the cause under review here which dates back to 1964.

The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

SCHNEIDER, LEACH and BROWN, JJ., concur.
O'NEILL, C. J., HERBERT and STERN, JJ., dissent.

O'NEILL, C. J., dissenting. I am of the opinion that *State* v. *Sims* (1971), 27 Ohio St. 2d 79, 272 N. E. 2d 87, should not be limited to prospective application. *Sims* is not a case which was designed merely to make state appellate procedures fair; rather, its principles are of constitutional magnitude. It begins with the premise that the right to counsel on appeal by an indigent convicted defendant is required by the equal-protection and due-process-of-law clauses of the Fourteenth Amendment. *Douglas* v. *California* (1963), 372 U. S. 353. See, also, *Anders* v. *California* (1967), 386 U. S. 738; *Swenson* v. *Bosler* (1967), 386 U. S. 258. This right does not depend upon a request by the indigent convicted defendant. *Carnley* v. *Cochran* (1962), 369 U. S. 506; *Swenson* v. *Bosler, supra*. See, also, *United States, ex rel. Smith.* v. *McMann* (C. A. 2, 1969), 417 F. 2d 648; *Kitchens* v. *Smith* (1971), 401 U. S. 847, 28 L. Ed. 2d 519. The right to counsel on appeal, *Douglas* v. *California, supra* (372 U. S. 353), is applied retroactively. *Smith* v. *Crouse* (1964), 378 U. S. 584.

This court acknowledged in *Sims* that the right to counsel on appeal is not lost unless the defendant knowingly and intelligently waived it, citing *Johnson* v. *Zerbst* (1938), 304 U. S. 458; *Carnley* v. *Cochran, supra*; *Swenson* v. *Bosler, supra*; *United States, ex rel. Smith,* v. *McMann, supra*. Thus, *Sims* held that an appellate court could not deny

leave to file a delayed appeal unless it first determined that an indigent convicted defendant knowingly and intelligently waived his right to court appointed counsel on appeal.

In *Sims*, this court found those principles equally applicable in determining whether an indigent convicted defendant waived his "right" to appeal. R. C. 2953.05. Although the right of appeal is not constitutionally mandatory, it is so inextricably intertwined with the right to counsel on appeal that it is a necessary concomitant of that right.[2] Thus, this court found that the right of appeal is not waived unless the indigent convicted defendant knew he had such right and knowingly and intelligently waived it. Without a waiver, the right of appeal is not lost. Accordingly, this court concluded that an appellate court could not deny leave to file a delayed appeal unless it first determined that an indigent convicted defendant knowingly and intelligently waived his right of appeal.

To prevent this problem from recurring, this court quoted with approval from *United States, ex rel. Smith,* v. *McMann, supra* (414 F. 2d 648), that the state has the duty to advise every person convicted of a crime of such rights. Other courts have taken the same position. See, *e. g., People* v. *Montgomery* (1969), 24 N. Y. 2d 130, 247 N. E. 2d 130; *United States, ex rel. Singleton,* v. *Woods* (C. A. 7, 1971), 440 F. 2d 835. See, also, *United States, ex rel. Witt,* v. *LaVallee* (C. A. 2, 1970), 424 F. 2d 421; *United States, ex rel. Kendzierski,* v. *Brantley* (C. A. 7, 1971), 447 F. 2d 806. Other federal courts, on petitions for habeas corpus, have held that if the indigent convicted defendant's trial counsel did not file his notice of appeal, or inform the indigent how to file it himself, he was denied the effective assistance of counsel. See *Nelson* v. *Peyton* (C. A. 4, 1969), 415 F. 2d 1154; *Gairson* v. *Cupp* (C. A.

[2]"However, where the opportunity to appeal is granted * * * it has been settled that an indigent convicted defendant cannot be deprived of this opportunity by his impecunious condition." *State* v. *Sims*, 27 Ohio St. 2d 79, 81.

9, 1969), 415 F. 2d 352. Still others have held that an evidentiary hearing must be held to determine whether such rights have been waived. See *Goodwin* v. *Cardwell* (C. A. 6, 1970), 432 F. 2d 521; *Woodall* v. *Neil* (C. A. 6, 1971), 444 F. 2d 92; *United States, ex rel. O'Brien*, v. *Maroney* (C. A. 3, 1970), 423 F. 2d 865. In Pennsylvania, when an allegation of such denial is made, the burden is on the state to show that the indigent knew of both rights and waived them. See *Commonwealth* v. *Freeman* (1970), 438 Pa. 1, 263 A. 2d 403; *Commonwealth* v. *Sprangle* (1971), 442 Pa. 271, 275 A. 2d 114. The Tenth Circuit has held that the time within which to file notice of appeal does not begin to run until the indigent has been advised of such right. *Wynn* v. *Page* (C. A. 10, 1966), 369 F. 2d 930.

The period between sentencing and filing a notice of appeal is a "critical" period. " * * * Appointment of counsel for an indigent is required at *every stage* of a criminal proceeding where substantial rights of a criminal accused may be affected." (Emphasis added.) *Mempa* v. *Rhay* (1967), 389 U. S. 128, 134. No one can seriously contend that the right to appellate review is less than a substantial right.[3] As Justice Black said in *Griffin* v. *Illinois* (1956), 351 U. S. 12, 18:

" * * * Statistics show that a substantial proportion of criminal convictions are reversed by state appellate courts. Thus to deny adequate review to the poor means that many of them may lose their life, liberty or property because of unjust convictions which appellate courts would set aside."

The majority opinion correctly concludes that under the "old standards" an indigent convicted defendant had no

---

[3] "'It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that *he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out,* where counsel's absence might derogate from the accused's right to a fair trial.'" (Emphasis added.) *Coleman* v. *Alabama* (1970), 399 U. S. 1, 7.

right to be informed of his right to appeal, or of his right to have counsel appointed to perfect that appeal. But, surely, this does not mean that those rights did not exist. In the absence of any waiver in the record, the court can not assume that such rights do not now exist. This court is thus faced with the anomalous result that those indigent convicted defendants who did not know of these rights, and therefore could not claim the benefit of them, and who have not waived those rights, can not assert them, even though they are still viable. I can not adhere to such a result.

Moreover, the majority opinion today effectively precludes any indigent whose time for appeal expired prior to July 7, 1971, from asserting any error, constitutional or otherwise. In *State* v. *Benton* (1971), 27 Ohio St. 2d 87, 272 N. E. 2d 92, this court held that the rights announced in *Sims* could not be made the basis for postconviction relief. It is noteworthy that Benton's conviction was final on February 16, 1967, and that he was accorded the benefit of the holding in *Sims*:

" * * * By the decision which we render in this case today, we have not foreclosed the appellant from a review of the alleged constitutional errors which he has asserted. In the posture of this case, those errors may be raised by motion for leave to appeal to the Court of Appeals. See *State* v. *Sims* * * *."

Surely, this court did not suggest that Benton perform a useless act. Yet the majority holding today would seem to allow the appellate court to deny leave to Benton after this court specifically told him to assert his claim there.

The majority opinion cites many cases in which constitutional rules of criminal procedure were not given retroactive effect. It does not, however, discuss even one case which was applied retroactively. As was noted above, *Smith* v. *Crouse, supra* (378 U. S. 584), applied *Douglas* v. *California, supra* (372 U. S. 353), retroactively (right to counsel on appeal, Fourteenth Amendment); *Kitchens* v.

*Smith, supra* (28 L. Ed. 2d 519), applied *Gideon* v. *Wainwright* (1963), 372 U. S. 335, retroactively (right to counsel at trial, Sixth and Fourteenth Amendments). See, also, *Pickelsimer* v. *Wainwright* (1963), 375 U. S. 2.

*Griffin* v. *Illinois* (1956), 351 U. S. 12, was applied retroactively by *Eskridge* v *Washington Prison Bd.* (1958), 357 U. S. 214 (right to transcript at state expense, Fourteenth Amendment). *Mempa* v. *Rhay* (1967), 389 U. S. 128, was applied retroactively by *McConnell* v. *Rhay* (1968), 393 U. S. 2 (right to counsel when suspended sentence is subsequently imposed, Sixth Amendment). *White* v. *Maryland* (1963), 373 U. S. 59, was applied retroactively in *Arsenault* v. *Massachusetts* (1968), 393 U. S. 5 (prohibiting the use of incriminating statements made by defendant at preliminary hearing without benefit of counsel, Fourteenth Amendment). See, also, *Berger* v. *California* (1969), 393 U. S. 314, which applied *Barber* v. *Page* (1968), 390 U. S. 719, retroactively, and *Roberts* v. *Russell* (1968), 392 U. S. 293, which held *Bruton* v. *United States* (1968), 391 U. S. 123, retroactive.

It is also significant that *Johnson* v. *New Jersey* (1966), 384 U. S. 719, which refused to apply *Miranda*[4] and *Escobedo*[5] retroactively, pointed out that there were alternatives available to the accused with which to review voluntariness errors. In a collateral proceeding (habeas corpus) a defendant could challenge the voluntariness of his statements or confessions because *Jackson* v. *Denno* (1964), 378 U. S. 368, has been given full retroactive effect in cases decided prior to 1964. Likewise, *Stovall* v. *Denno* (1967), 388 U. S. 293, refused to apply *Wade*[6] and *Gilbert*[7] retroactively, but the court acknowledged that if the circumstances surrounding the line-up for identification purposes or the taking of the exemplar were so prejudicial it remains open to the defendant to show that it

[4]*Miranda* v. *Arizona* (1966), 384 U. S. 436.

[5]*Escobedo* v. *Illinois* (1964), 378 U. S. 478.

[6]*United States* v. *Wade* (1967), 388 U. S. 218.

[7]*Gilbert* v. *California* (1967), 388 U. S. 263.

150

amounted to a denial of due process of law. *Stovall* v. *Denno, supra,* at page 299.

Recently, in *Adams* v. *Illinois* (1972), U. S. , 31 L. Ed. 2d 202, the court held *Coleman* v. *Alabama* (1970), 399 U. S. 1, prospective only. Significantly, however, it acknowledged that *under Illinois law* Adams could obtain a hearing in the state court if he alleged that the denial of counsel at the preliminary hearing was so prejudicial as to amount to a denial of due process of law. ''Such a claim would entitle him to a hearing without regard to today's holding that *Coleman* is not to be retroactively applied.'' (Page 209.) By contrast, because of our decision in *State* v. *Benton, supra* (27 Ohio St. 2d 87), and by our decision today we have effectively prevented an indigent who has never had appellate review from even making a claim of denial of due process of law.

The Supreme Court has often stated that the retroactivity of a rule is not determined solely by the constitutional provision on which it is based. The court begins with the proposition that it is neither prohibited nor required to apply a rule retroactively, and then analyzes the new rule in relation to its purpose, the prior reliance placed on it by the authorities, and the effect of a retroactive application on the administration of justice.

The purpose of *Sims* is not only to assure that indigency does not become a determining factor in the appellate process, but also to allow those indigents who have not waived their rights an opportunity for appellate review of errors which they may constitutionally claim. See *Douglas* v. *California, supra* (372 U. S. 353); *Anders* v. *California, supra* (386 U. S. 738); *Swenson* v *Bosler, supra* (386 U. S. 258); *Johnson* v. *Zerbst, supra* (304 U. S. 458); *Carnley* v. *Cochran, supra* (369 U. S. 506); and *Kitchens* v. *Smith, supra* (28 L. Ed. 2d 519).

Whatever reliance was placed on the ''old standards'' is inapposite for the reason that, in the absence of a waiver, the rights of an indigent convicted defendant to an appeal and to have counsel appointed to perfect that appeal

are still viable. Merely because a defendant under the "old standards" did not have the *right to be informed* that he could appeal and, if indigent, have counsel appointed to perfect his appeal, does not mean his right to appeal and the right, if indigent, to have counsel appointed to perfect his appeal never existed.

Furthermore, the short answer to the majority's correct conclusion that the result in *Sims* was not foreshadowed by our prior decisions, is that such result should have been anticipated by the prior decisions of the United States Supreme Court, beginning with *Douglas* v. *California, supra.*[8]

I disagree wtih the majority's conclusion that a holding of retroactivity would significantly affect the administration of justice. For example, no indigent would be entitled to a complete transcript, because *Sims* only requires a hearing to determine whether the indigent's two rights were waived. At most, only the notes of the sentencing proceeding need be reproduced. Moreover, a holding of retroactivity would only apply to *indigents who have not had appellate review*. Admittedly, counsel would be

---

[8]The holdings of *Douglas, supra* (372 U. S. 353), and its progeny are predicated upon "due process" and "equal protection" grounds, and a fair reading of those cases does not reveal an attempt by the Supreme Court to limit its holdings to the factual pattern there presented.

Likewise, when *Douglas* was made retroactive by *Smith* v. *Crouse, supra* (378 U. S. 584), the Supreme Court made no attempt to limit its holding to a factual pattern. The single and central issue is whether the defendant waived his right to counsel on appeal. I note that defendant Smith *did not request* that the trial judge appoint counsel to perfect his appeal (see *Smith* v. *Crouse* [1963], 192 Kan. 171, 386 P. 2d 295, 296), and that he was tried and convicted in March 1960.

The Supreme Court's opinion in its entirety states:

"The motion for leave to proceed in forma pauperis and the petition for writ of certiorari are granted. The judgment is reversed. *Douglas* v. *California.*"

Surely, had the court attempted to limit the retroactivity of *Douglas* to the "situation as was there presented," it would certainly have so stated.

required for the hearing, but only in the event that no waiver was found would counsel be required for purposes of appeal.

The majority opinion emphasizes that appellant's motion is unsupported by a statement of errors relating to the merits of the appeal. It fears that to hold *Sims* retroactive would place too great a fiscal burden on the state for once indigents are granted delayed appeal they are entitled to counsel and a transcript at state expense. But the state's fiscal burden is an irrelevant factor when the principles of *Griffin* v. *Illinois, supra* (351 U. S. 12) are involved.

Moreover, the present procedure by which an indigent convicted defendant seeks delayed appeal "can only impede open and equal access to the courts." *Mayer* v. *Chicago* (1971),     U. S.     , 30 L. Ed. 2d 372. An indigent convicted defendant will not be granted leave to file a delayed appeal unless he shows that error occurred at trial *and that such errors justify a reversal* of his conviction. Realistically, however, he can not show error without the benefit of a transcript. And he can not obtain a transcript unless he has an appeal pending. *State, ex rel. Partee,* v. *McMahon* (1963), 175 Ohio St. 243, 193 N. E. 2d 266. Thus, the indigent convicted defendant is trapped in a hopeless dilemma which operates to deny any appellate review whatsoever.

In *Rodriquez* v. *United States* (1969), 395 U. S. 327, an indigent defendant sought post conviction relief (reinstatement of appeal) under Section 2255, Title 28, United States Code. Both the District Court and the Ninth Circuit Court of Appeals denied relief because of a self-imposed rule which required defendants "to disclose what errors they would raise on appeal *and to demonstrate that denial of an appeal had caused prejudice."* (Emphasis added.)

The court rejected such a rule because it "makes an indigent defendant face 'the danger of conviction because he does not know how to establish his innocence.'" It held

"that the courts below erred in rejecting petitioner's application for relief because of his failure to specify the points he would raise were his rights to appeal reinstated," at page 330. In *Ellis* v. *Maine* (C. A 1, 1971), 448 F. 2d 1325, 1328, the court, citing *Rodriquez,* stated: " * * * ordinarily where a defendant is not informed of his right of appeal he * * * [has] no burden to show * * * that the appeal would have had merit." Moreover, the First Circuit in *Wilbur* v. *Maine* (C. A. 1, 1970), 421 F. 2d 1327, and the Second Circuit in *United States, ex rel Randazzo,* v *Follette* (C. A. 2, 1971), 444 F. 2d 625, held *Rodriquez* applicable to *state* defendants.

The state's increased fiscal burden should not be a bar to the retroactivity of *Sims.* This is made clear in *Mayer* v. *Chicago, supra* (30 L. Ed. 2d 372, 379): "*Griffin* does not represent a balance between the needs of the accused and the interests of society; its principle is a flat prohibition against pricing indigent defendants out of as effective an appeal as would be available to others able to pay their own way. * * * The state's fiscal interest is, therefore, irrelevant."

Significantly, those cases in which the new rule was held prospective only had certain factors not present in the instant case. For example, infringement of the constitutional right could not be remedied; a retroactive application could not correct the harm done; there was no clear danger of convicting the innocent; the "condemned practice" does not present a substantial likelihood that the trials were incorrect; and the constitutional infirmity was not clearly foreshadowed by previous decisions.

In contrast, those cases in which the new rule was held retroactive contain factors which are present in the instant case. For example, there is a clear danger of convicting the innocent; the rule was clearly foreshadowed by prior decisions; the infringement of the constitutional right can be remedied; and the "condemned practice" substantially impairs the truth-finding process. Clearly, these factors are present in the instant case.

154

The Supreme Court's position is best stated in *Williams* v. *United States* (1971), 401 U. S. 646, 28 L. Ed. 2d 388, 395:

"Where the major purpose of new constitutional doctrine is to overcome an aspect of the criminal trial which substantially impairs its truth-finding function *and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule has been given complete retroactive effect.* Neither good-faith reliance by state or federal authorities on prior constitutional law or accepted practice, nor severe impact on the administration of justice has sufficed to require prospective application in these circumstances." (Emphasis added.) See, also, *Adams* v. *Illinois* (1972), 31 L. Ed 2d 202, 207, which reemphasizes that rule.

Based on the foregoing, the conclusion is inescapable that full retroactive effect should be given to *Sims*. *Sims* is a constitutionally required holding and the *Douglas* case, on which it is based, has been accorded full retroactive effect by the Supreme Court. To deny retroactivity to *Sims* is to erode the principle of *Douglas*. As long as the rights of the indigent still exist, he should be afforded an opportunity to assert them.

HERBERT and STERN, JJ., concur in the foregoing dissenting opinion.