The PEOPLE of the State of Colorado, Plaintiff-Appellee,

v.

Daniel Pierre BOIVIN, Defendant-Appellant.

No. 80CA0373.

Colorado Court of Appeals, Div. III.

March 19, 1981.

Rehearing Denied April 9, 1981.

Certiorari Granted Aug. 10, 1981.

---

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., William Morris, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Terry L. Perlet, Colorado Springs, for defendant-appellant.

BERMAN, Judge.

Defendant (movant) asks this Court for leave to file out of time a notice of appeal from his conviction of aggravated robbery. The record reveals that the conviction in question occurred on June 28, 1976. In a Crim.P. 35(b) motion for post-conviction relief, filed March 21, 1980,[1] movant sought the trial court's leave to file out of time a notice of appeal. This motion was premised, *inter alia*, upon the trial court's assertedly having failed fully to advise movant, as required by C.A.R. 4(c)(2)(II)(A), of his right to appeal. The trial court ruled that it was without jurisdiction to consider movant's request; consequently, the motion was denied.

On July 7, 1980, movant filed in this Court a document which we elect to treat as a motion requesting this Court's leave to

---

1. Crim.P. 35 was amended November 13, 1979. The content of former subsection (b) is now part of subsection (c) of the amended rule. Thus, the motion should have been denominated a Crim.P. 35(c) motion.

file a late notice of appeal. *See Haines v. People,* 169 Colo. 136, 454 P.2d 595 (1969).

## I.

Relying on *Haines, supra,* the People argue that movant's request must be denied. *Haines* established a two-part standard to guide an appellate court in determining whether to permit untimely appeal from a criminal conviction. First, there must be "factors" indicating that movant was deprived of his appellate rights; second, "meritorious grounds for appellate review must be shown."

██ Thus, the first question here is whether there are "factors" which excuse movant's failure timely to file notice of appeal. In this regard, movant claims that he was not aware of his right to appeal, and that his counsel did not advise him of such right. Movant further insists that the trial court itself did not advise him of such right, and consequently failed to comply with the dictates of C.A.R. 4(c)(2)(II)(A). *See also* Crim.P. 32(c).

In a *pro se*[2] Crim.P. 35(b) motion, filed December 11, 1979, movant unsuccessfully sought post-conviction relief on the basis that, *inter alia,* he was deprived of effective assistance of counsel because "counsel did not perfect an appeal on the merits of the case as asked by the defendant." It is apparent, therefore, that movant had *some* awareness of his appellate rights. The People contend that, as a result, movant may not now complain that he was not advised concerning his right to appeal. We disagree.

Compliance with both C.A.R. 4(c)(2)(II)(A) and Crim.P. 32(c) is mandatory. C.A.R. 4(c)(2)(II)(A) requires, in pertinent part, that

> "the district court *shall* advise the defendant at the time of sentencing of his right to appeal, including his right to appeal the sentence, of the time within which the appeal must be taken, and his

right to be represented by counsel. The time for filing the notice of appeal may be extended by either the sentencing court or the appellate court." (emphasis added)

Crim.P. 32(c) requires, in pertinent part, that

> "[e]xcept in cases where judgment of conviction has been entered following a plea of guilty or nolo contendere, the court *shall* after passing sentence inform the defendant of his right to seek review. In cases in which the court has previously made a determination that the defendant is indigent, the court shall also inform the defendant of his right to the assistance of appointed counsel upon review, and of his right to obtain a record on appeal without payment of costs." (emphasis added)

The question becomes whether noncompliance with the stated rules can be forgiven on the basis that a defendant acquired independent knowledge of his appellate rights. We hold that it cannot.

In the first place, a mere showing that a defendant at *some* point had *some* awareness of his right to appeal would scarcely obviate the need for full compliance with the quoted provisions. The purpose of the rules in question is not merely to alert a defendant that he has some right to appeal, but, rather, is to inform him as to what may be appealed, the pertinent time limits, and the availability, if defendant is indigent, of a free trial transcript and of appointed counsel to assist in pursuit of an appeal. Further, the rules are designed to provide such information in time for a defendant to put it to effective use.

In a very practical sense, effective access to the appellate process depends upon certain minimum knowledge concerning that process. The rules here involved were designed expressly to impart such knowledge. While that knowledge could indeed be acquired by other means, such as through advice of counsel, we think the intent behind the rules is to establish some *minimum*

---

**2.** At trial, the public defender represented movant up to and including the filing of a motion for new trial. With respect to the filing of the

March 21, 1980, Crim.P. 35(b) motion, movant was represented by counsel retained by movant's father.

*guarantee* that such knowledge will be conveyed to defendants.

The instant case illustrates well the problem the rules seek to avoid. As has been noted, movant had, at some point, some awareness of his appellate rights. But, there is nothing in the record to indicate precisely *when* such awareness arose, nor how comprehensive that awareness was. In the hearing pursuant to his March 21, 1980, Crim.P. 35(b) motion, movant testified without contradiction that his trial counsel did not inform him of his appellate rights, and that he first learned of them some time after his incarceration in the penitentiary. That testimony is not on its face inconsistent with a claim that counsel failed to perfect an appeal at movant's request, for nowhere is it shown *when* movant requested trial counsel to perfect the appeal. Moreover, the trial court itself conceded at the same hearing that "the Court did not advise [movant] of his right to appeal." Thus, nothing in the record before us establishes that movant's knowledge of his appellate rights was timely enough and comprehensive enough to obviate the need for the salutary function C.A.R. 4 and Crim.P. 32 were designed to perform.

The People would have us remand the cause for a hearing limited to the issue of whether, despite the trial court's concession, movant nevertheless had timely actual knowledge of each appellate right listed in C.A.R. 4(c)(2)(II)(A) and Crim.P. 32(c). However, at the Crim.P. 35(b) hearing, the People had ample opportunity to challenge movant's assertions concerning his lack of knowledge of his rights. The People failed to use that opportunity. Indeed, the attorney for the People did not even bother to cross-examine movant at that hearing. Thus, the People are not in a position now to complain. Such considerations, however, are not necessary to our conclusion. Instead, from the standpoint of efficient and uniform judicial administration, we think it simpler and fairer to insist, in *every* case, upon full compliance with the rules in question; consequently, we decline to order an additional hearing.

Our holding is supported by opinions construing Federal Rule of Criminal Procedure 32(a)(2), of which our Crim.P. 32(c) is the direct counterpart. For example, the United States Court of Appeals for the Third Circuit has adopted "the view that the mandatory time limit for perfecting an appeal does not begin to run until the defendant is actually notified of his rights [in accordance with the rule]," because "[t]here is no adequate substitute for compliance *on the record* with Rule 32(a)(2)." *United States v. Deans*, 436 F.2d 596 (3rd Cir. 1971) (emphasis added). *Accord, State v. Fletcher*, 174 N.J.Super. 609, 417 A.2d 106 (1980) (construing New Jersey's counterpart to federal rule 32(a)(2)).

■ Thus, once there is sufficient reason to believe that the trial court has not advised a defendant of his appellate rights (including the special rights of an indigent defendant), the burden falls upon the People to demonstrate that he was so advised. This is so because law, generally speaking, and formal logic place the burden of proof upon him who asserts the affirmative of a proposition; not upon him who asserts an existential negative. *See generally American Insurance Co. v. Naylor*, 101 Colo. 34, 70 P.2d 349 (1937). The People failed to meet that burden in this case.

In conclusion, we hold that movant's right to appeal was effectively frustrated, and, therefore, that the first element of the *Haines* test has been satisfied. *See generally Wynn v. Page*, 369 F.2d 930 (10th Cir. 1966).

## II.

■ As to the second aspect of *Haines*, the threshold question is whether, in light of *Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), and its progeny, the Colorado Supreme Court would entirely adhere to its former opinion. *Rodriquez*, decided after *Haines*, involved a federal, rather than a state, defendant. In that case, petitioner brought "suit for post-conviction relief under 28 U.S.C. § 2255, alleging that after his conviction . . . he had been improperly denied his right to

appeal." Petitioner's counsel did not submit a notice of appeal within the period specified by the applicable federal rule. After the time had expired, petitioner himself attempted to file a notice of appeal. The trial court ruled that expiration of the appeal period deprived the court of jurisdiction. Petitioner then sought relief in the Court of Appeals for the Ninth Circuit, alleging that he had told his counsel to perfect an appeal, but that counsel had failed to do so. The Court of Appeals also denied petitioner's motion for lack of jurisdiction.

Both the District Court and the Court of Appeals held that applicants in petitioner's position were required to disclose what errors they would raise on appeal, and to demonstrate that denial of an appeal had prejudiced their cause. The United States Supreme Court reversed, holding that petitioner's failure to specify points he would raise were his right to appeal reinstated, after being lost for failure timely to file notice of appeal, did not justify rejection of his application for post-conviction relief.

In analyzing the question whether the Colorado Supreme Court would follow *Haines* in its entirety, we have the benefit of four somewhat overlapping classes of judicial precedents. First, there are cases from the lower federal courts which consider *Rodriquez's* scope, including especially its applicability to state defendants. Second, there are lower federal court cases which, though not relying on *Rodriquez*, establish a *Rodriquez*-like rule which is binding upon state courts. Third, there are cases from the courts of our sister states which consider the effect of *Rodriquez* on the law of their own states. Fourth, there are various cases which call into question the current vitality of those opinions upon which the Colorado Supreme Court relied in reaching its decision in *Haines*.

### A.

As has been noted, *Rodriquez* itself involved a federal defendant. The United States Supreme Court has not spoken concerning whether the rationale of *Rodriquez* would require the rule in that case to apply also to state defendants. And, initially, that question produced a split of authority among the circuits of the United States Court of Appeals. Now, however, the circuits which have considered the question appear unanimously to hold "that *Rodriquez* is applicable to state prisoners seeking the reinstatement of an appeal through federal habeas corpus relief." *United States ex rel. Randazzo v. Follette*, 444 F.2d 625 (2d Cir. 1971); *Wilbur v. Maine*, 421 F.2d 1327 (1st Cir. 1970); *Riser v. Craven*, 501 F.2d 381 (9th Cir. 1974), *overruling Buster v. Hocker*, 428 F.2d 820 (9th Cir. 1970).

### B.

The United States Court of Appeals for the Seventh Circuit though not citing *Rodriquez*, has established a *Rodriquez*-like rule which that Court has applied to state defendants. *Sutton v. Lash*, 576 F.2d 738 (7th Cir. 1978); *United States v. Woods*, 440 F.2d 835 (7th Cir. 1971). Thus, the Seventh-Circuit rule, though based on somewhat different authority, is entirely consonant with that of the First, Second, and Ninth Circuits, see part A, *supra*.

### C.

*Rodriquez* has generated five basic lines of cases in state courts.

First, there are cases which appear to find the federal-versus-state-defendant distinction to be an immaterial one and, therefore, find *Rodriquez* directly applicable to state proceedings. *See, e. g., Ball v. State*, 479 S.W.2d 486 (Mo.1972); *Babson v. Wainwright*, 376 So.2d 1187 (Fla.App.1979). This approach has been followed to overrule precedents quite analogous to *Haines* with respect to the requirement of an allegation of meritorious grounds for appeal. *See, e. g., Stinnett v. Commonwealth*, 446 S.W.2d 292 (Ky.1969).

Second, there are cases which, though not necessarily finding the federal-versus-state-defendant distinction to be an immaterial one, nevertheless find the *reasoning* in *Rodriquez* sufficiently persuasive to warrant

adoption of the *Rodriquez* rule as a matter, at least in part, of state law. This approach, too, has been used to overrule *Haines*-like precedents. *See, e. g., Baggett v. Wainwright,* 229 So.2d 239 (Fla.1969); *Brine v. State,* 264 A.2d 530 (Me.1970).

Third, at least one case also follows the local circuit of the United States Court of Appeals, see part A, *supra,* holding that *Rodriquez* applies to state defendants. *Brine, supra.*

Fourth, there are cases which find *Rodriquez* distinguishable on grounds absent in the instant case.[3]

Finally, there are cases which distinguish *Rodriquez* on grounds which might be thought also to justify distinguishing the instant case. *See, e. g., State v. LeRoy,* 30 Ohio St.2d 138, 283 N.E.2d 136 (1972); *Jones v. State,* 3 Kan.App.2d 578, 598 P.2d 565 (1979). These latter cases, however, appear to run contrary to the rule established in the various circuits of the United States Court of Appeals, see parts A and B, *supra.* Indeed, three Justices of the Ohio Supreme Court, relying, *inter alia,* on *Wilbur, supra,* and *Randazzo, supra,* vigorously dissented in *LeRoy.*

### D.

In holding that "an essential and reasonable requirement of a request for a *late* filing of a writ of error is a showing that meritorious grounds for review exist," (emphasis in original), the *Haines* Court placed primary reliance upon a pre-*Rodriquez* case, *Fennell v. United States,* 339 F.2d 920 (10th Cir. 1965). Because *Fennell* involved a *federal* defendant, the holding in that case is brought into direct question by *Rodriquez.* Though *Rodriquez* did not itself cite *Fennell,* a comparison of the two opinions suggests that *Rodriquez* overruled *Fennell.*

While it is not, of course, conclusive of the question whether the Colorado Supreme Court would adhere to *Haines,* the invalidation of *Fennell* does substantially erode *Haines'* underpinnings in its "meritorious grounds for review" aspect.[4]

Further, the Tenth Circuit position vis-a-vis *state* defendants, as expressed in a post-*Fennell* opinion delivered by an entirely different panel of judges from that which decided *Fennell,* required, under circumstances quite analogous to those of the instant case, no allegation of meritorious grounds as a condition precedent to a late appeal. *Wynn v. Page, supra.*

### E.

In measuring the current force of *Haines,* "our function cannot be limited to a mere blind adherence to precedent. We must determine with the best exercise of [those] mental powers of which we are capable that law which in all probability will be applied to [this litigant] or to others similarly situated. If this means the . . . applying of a 'new doctrinal trend' [to our courts,] . . . this is our task to be performed directly and straightforwardly, rather than [to be] 'artfully' dodged." *Spector Motor Service v. Walsh,* 139 F.2d 809 (2d Cir. 1943). And, as expressed by Learned Hand, dissenting in *Spector*: "It is always embarrassing for a lower court to say whether the time has come to disregard decisions of a higher court, not yet explicitly overruled. . . . [But,] I agree that one should not wait for formal retraction in the face of changes plainly foreshadowed. . . ." Judge Hand went on to say: "I conceive that the measure of [a lower court's] duty is to divine, as best it can, what would be the event of an appeal in the case before it."

---

**3.** *See, e. g., Cleesen v. Brewer,* 172 N.W.2d 262 (Iowa 1969); *Kime v. Brewer,* 182 N.W.2d 154 (Iowa 1970); *State v. Tapia,* 80 N.M. 477, 457 P.2d 996 (1969); *Ewing v. State,* 80 N.M. 558, 458 P.2d 810 (1969); *People v. Haynes,* 60 Misc.2d 671, 303 N.Y.S.2d 568 (1969); *Pires v. Commonwealth,* 373 Mass. 829, 370 N.E.2d 1365 (1977); *In re Parizo,* 137 Vt. 365, 404 A.2d 114 (1979).

**4.** All of the cases the *Haines* Court cited to support the "meritorious grounds" requirement were from the federal courts. Among those cases was, in addition to *Fennell, Rodriquez v. United States,* 387 F.2d 117 (9th Cir. 1967), the very decision which was, as we have discussed, later reversed by the United States Supreme Court.

In divining "what would be the event of an appeal" of the instant case to the Colorado Supreme Court, we note that the second aspect of *Haines* is, as has been demonstrated, contrary to the manifest weight of recent judicial authority. We note also the sound rationale underlying those cases considering and adopting the *Rodriquez* rule, to wit, that, *once justification for an appellant's untimely filing is established*, it seems anomalous to place, by requiring a threshold showing of merit, such an appellant in a less-advantageous position than one whose appeal has been timely taken. With the foregoing in mind, we think that in all probability the Colorado Supreme Court, were it to consider the same question today in the light of the substantial body of opinion of which the *Haines* court did not have the benefit, would not adhere to *Haines'* second requirement.

### III.

We conclude that, in the instant case, movant has satisfied what we consider to be the current requirements of *Haines*. In so doing, he has also met the C.A.R. 26(b) "good cause" standard for enlargement of time for appeal. *Cf. People v. Allen*, 182 Colo. 395, 513 P.2d 1060 (1973).

Therefore, the motion to file late appeal is granted, and the cause shall stand docketed in this Court as of the date of this order. The time for filing of the record and the briefs shall run in accordance with C.A.R. 11(a) and C.A.R. 31(a). In ruling on this motion, we express no opinion as to the merits of movant's appeal.

VAN CISE, J., concurs.

ENOCH, C. J., dissents.

ENOCH, Chief Judge, dissenting.

I respectfully dissent.

In part two of its opinion, the majority concludes that a meritorious ground for appellate review need not be shown before an appeal may be filed out of time. The majority rationalizes that this requirement, as announced in *Haines v. People*, 169 Colo. 136, 454 P.2d 595 (1969), would, in light of

the United States Supreme Court's opinion in *Rodriquez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), and its progeny, no longer be followed by the Colorado Supreme Court. While the Supreme Court might well reconsider *Haines* in light of subsequent authority, such conclusion is not foregone.

The *Rodriquez* standard was not imposed as a requirement upon the states, and although there may be a trend toward abandonment of the requirement that a meritorious ground be shown, the jurisdictions are not unanimous. *See, e. g., Jones v. State*, 3 Kan.App.2d 578, 598 P.2d 565 (1979). Furthermore, I find nothing offensive in the requirement that for defendant in this case to be allowed to file a notice of appeal over three and one-half years late, he must at least show some meritorious ground for appellate review.

Whether *Haines* remains viable authority is a question better left for the Supreme Court, and, since defendant has failed to show a meritorious ground for review, I would deny the motion to file a notice of appeal out of time.