Thomas GOODWIN, Jr., Petitioner-Appellant,

v.

H. J. CARDWELL, Warden, Respondent-Appellee.

No. 19878.

United States Court of Appeals, Sixth Circuit.

Oct. 6, 1970.

As Corrected Oct. 19, 1970.

---

James W. Carpenter, Columbus, Ohio, on brief for petitioner-appellant.

Stephen M. Miller, Asst. Atty. Gen., Columbus, Ohio, for respondent-appellee; Paul W. Brown, Atty. Gen., Columbus, Ohio, on brief.

Before PHILLIPS, Chief Judge, Mc-CREE, Circuit Judge and O'SULLIVAN, Senior Circuit Judge.

PHILLIPS, Chief Judge.

This is a habeas corpus action which was dismissed by the District Court without an evidentiary hearing.

In the State court of Ohio petitioner was tried before a jury and found guilty of rape. He was sentenced to a term of three to twenty years. He did not perfect an appeal within thirty days, but thereafter exhausted all available post conviction remedies in the State courts, including an application for delayed appeal, which was denied.

Petitioner contends that he was deprived of the effective assistance of counsel as guaranteed by the Sixth Amendment. It is asserted that petitioner was represented in the State court by an attorney employed by his mother and that this attorney never advised him of his right of appeal.

In Henderson v. Cardwell, Warden, 426 F.2d 150 (6th Cir.), the petitioner for a writ of habeas corpus contended that he was deprived of the effective assistance of counsel because his court-appointed attorney failed to advise him that he was entitled to appeal as a matter of right. This Court, speaking through Judge Cecil, remanded the case to the District Court for an evidentiary hearing to determine whether appellant was denied an appeal by reason of his lack of knowledge of his right and the failure of his counsel to advise him of his right to appeal with the aid of counsel, citing with approval the majority opinion in United States ex rel. Smith v. McMann, 417 F.2d 648 (2d Cir., in banc), cert. denied, 397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d 105.

To like effect see Benoit v. Wingo, 423 F.2d 880 (6th Cir.); Yates v. Wingo, 425 F.2d 1167 (6th Cir.); Lewis v. Henderson, 381 F.2d 523 (6th Cir.).

In Smartt v. Bomar, 340 F.2d 593 (6th Cir.), and Horton v. Bomar, 335 F.2d 583 (6th Cir.), this Court held that the failure of the State trial judge to appoint counsel to prosecute an appeal did not deprive the defendant of any constitutional right. We do not read these decisions as authority for the proposition that a defendant who has no knowledge of his right to appeal may not be deprived of the effective assistance of counsel by the failure of his attorney to advise him of this right.

We hold that the petitioner in his application for a writ of habeas corpus in the present case has alleged facts which, if true, may have constituted a violation of his right to the effective assistance of counsel and that he was entitled to an evidentiary hearing. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473.

The dissenting opinion suggests the drawing of a distinction between court-appointed and privately retained attorneys with respect to the right of a defendant to the effective assistance of counsel in the form of advice as to the right to appeal. We follow the majority opinion in United States ex rel. Smith v. McMann, *supra*, in holding that a defendant may be deprived of the effective assistance of privately retained counsel. See also Atilus v. United States, 406 F.2d 694 (5th Cir.).

We remand the case to the District Court with instructions to appoint counsel to represent petitioner and to conduct an evidentiary hearing to determine whether petitioner was denied an appeal by reason of his lack of knowl-

edge of his right and the failure of his counsel or the court to advise him of his right to appeal with the aid of counsel.

Vacated and remanded.

O'SULLIVAN, Senior Circuit Judge (dissenting).

I regret my need to dissent. This matter involves but another of the now multitudinous, and most often meritless, applications for habeas corpus relief by state prisoners. Here petitioner Goodwin asks the District Judge to command the State of Ohio to entertain, out of time, a plenary appeal from his conviction of the crime of rape. He was convicted of such offense upon a jury trial in the Court of Common Pleas of Hamilton County, Ohio, at which trial Goodwin was represented by *privately retained counsel*. On April 11, 1963, he was sentenced to serve a term of three to twenty years. The petition before us was filed in the United States District Court for the Southern District of Ohio, Eastern Division, on August 2, 1968, upwards of eight years after petitioner entered prison. On August 21, 1969, the District Judge, upon motion of the Attorney General of Ohio, dismissed the petition, supporting his ruling by an extensive and carefully prepared opinion. Section 2953.05 of the Ohio Revised Code provides:

"Appeal under section 2953.04 of the Revised Code, may be filed as a matter of right within thirty days after sentence and judgment. After thirty days from sentence and judgment, such appeal may be filed only by leave of the court or two of the judges thereof."

Goodwin's claim is that, having been given such right of appeal, he was deprived of it, contrary to the Fourteenth Amendment to the United States Constitution, because neither his retained counsel, the trial judge, nor anyone else told him of this right and of the time within which he was required to assert it. There is nothing in the petition for writ of habeas corpus, prepared by appointed counsel, to suggest that Goodwin

was the slightest bit interested in appealing his conviction within said thirty day period, nor at any time prior to about three years thereafter when, in the state court, he began the extended proceedings which culminated in the matter before us. The District Judge concluded:

"In Ohio, the appeal as of right within thirty days of conviction is equally available to all persons who assert the right, even those who assert the right to appeal informally. See State v. Catlino, 10 Ohio St. (2nd) 183 [226 N.E.2d 109].

"Therefore, the Court holds the state has no federal constitutional obligation to inform defendants of their state created rights.

"The Court also holds that the petitioner has no constitutional right to appeal as of right after the expiration of the thirty day period following appeal."

I would affirm.

My brothers would reverse and remand for an evidentiary hearing, citing Henderson v. Cardwell, Warden, 426 F.2d 150 (6th Cir.1970); Yates v. Wingo, 425 F.2d 1167 (6th Cir.1970); Benoit v. Wingo, 423 F.2d 880 (6th Cir.1970), and Lewis v. Henderson, 381 F.2d 523 (6th Cir.1967).

In each of these cases the petitioners were represented by *court-appointed counsel or a public defender*. I consider that this distinction is of controlling importance, and the cases are otherwise inapposite here.

I point out their distinctions as follows:

In *Henderson* the petitioner charged that he was denied a fair and impartial trial, that the indictment upon which he was tried was void, and that his *state court-appointed counsel* failed to adequately represent him at trial. Goodwin makes no such claim here.

In *Yates* the petitioner was represented by *state court-appointed counsel*. The opinion states, "His counsel filed a motion for a new trial. Petitioner alleged that he then *requested his counsel*

*to appeal* but the lawyer refused to discuss an appeal and walked away from him." He further alleged that his "counsel had abandoned him." 425 F.2d at 1167.

In *Benoit* petitioner's *court-appointed counsel* did file a notice of appeal and began processing the same, but later abandoned it, telling Benoit that such an appeal would be without merit. This advice came to Benoit, "When the time for perfecting the appeal had either expired or was so near to expiration that appellant couldn't have been expected, on his own, to have processed the appeal." 423 F.2d at 882.

In *Lewis* the petitioner was represented by a *state public defender* who conceded his own failure to properly protect the rights of Lewis.

"In spite of this regrettable situation [that the petitioner was a person with a low degree of intelligence] the statements made by [the Public Defender] that, due to no fault of his own but due to the overwhelming amount of work in his office and his limited staff, he had furnished inadequate representation to this petitioner * * *." 381 F.2d at 528.

In two cases decided earlier we have, by clear implication, held that where an accused was represented by retained counsel at trial, who neglected or refused to take or effectively prosecute an appeal, it was not the duty of a state trial judge to inquire into the continuing relationship between the client and his lawyer and thus to make sure that the accused's right to appeal was effectively asserted. See Horton v. Bomar, 335 F.2d 583 (6th Cir.1964), and Smartt v. Bomar, 340 F.2d 593 (6th Cir.1965).

In *Horton,* we took occasion to say:

*"There is no constitutional right to an appeal. There must be some bona fide ground for it, otherwise an appeal would be frivolous.* Neither the appellant nor counsel on his behalf make any claim that any of the appellant's constitutional rights were violated in the trial court. The alleged failure of the trial judge to appoint counsel to prosecute an appeal presents no Federal Constitutional question to this court. (Emphasis supplied.) 335 F.2d at 584.

In *Smartt,* where accused also had been represented by *retained counsel,* we said:

"He [Smartt] contends that the Tennessee trial judge should have appointed counsel to perfect and carry on his appeal. *No request therefor was made by Smartt. Neither was the trial court informed of Smartt's indigency, if such was the fact.* * * * He contends, however, that the state trial judge should have assumed such from his dispute over fees with his own retained counsel and should have appointed counsel for him sua sponte. We find no merit in this contention. See State ex rel. Dych v. Bomar, 213 Tenn. 699, 378 S.W.2d 772 (1964); Horton v. Bomar, 335 F.2d 583 (CA 6, 1964); McCoy v. Bomar, 333 F.2d 959 (CA 6, 1964). The principle stated in Carnley v. Cochran, 369 U.S. 506, 513, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), that counsel must be provided where constitutionally required regardless of whether the defendant so requests, *does not apply where the defendant has been represented throughout the trial by retained counsel and there is no indication that he is unable, rather than unwilling, to pay counsel fees."* 340 F.2d at 595.

In Griffin v. Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1955), the Supreme Court said:

"It is true that a State is not required by the Federal Constitution to provide appellate courts or a right to appellate review at all. See, *e.g.,* McKane v. Durston, 153 U.S. 684, 687–688, [14 S.Ct. 913, 38 L.Ed. 867]. But that is not to say that a State that does grant appellate review can do so in a way that discriminates against some convicted defendants on account of their poverty." 351 U.S. at 18, 76 S.Ct. at 590.

In McKane v. Durston, 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894), Mr. Justice Harlan said:

> "An appeal from a judgment of conviction is not a matter of absolute right, independently of constitutional or statutory provisions allowing such appeal. A review by an appellate court of the final judgment in a criminal case, however grave the offence of which the accused is convicted, was not at common law and is not now a necessary element of due process of law. *It is wholly within the discretion of the state to allow or not to allow such a review.*" (Emphasis supplied.) 153 U.S. at 687, 14 S.Ct. at 915.

I would hesitate to turn for support to such ancient law except that its validity and respectability have been freshly sustained by Griffin v. Illinois, a case highly esteemed in today's constitutional milieu. The Ohio statute gives a person convicted of crime the right to appeal provided the right is exercised within a limited time—30 days. This time limit applies to the rich as well as the poor. Appellant's counsel here hypothesizes a claim of discrimination as follows:

> "To illustrate the predicament of the indigent defendant, one might hypothesize the following situation, *which is becoming all too common in Ohio's courts today*: The convicted defendant appears before the judge for sentencing. Shaken by the turn of events, the defendant can only mumble when the Court asks him if he has anything to say for himself. As he is being led away by the bailiff, he looks to his trial counsel for reassurance, but can only catch a glimpse of his former advisor leaving via a different exit. Within a couple of hours, the defendant is on his way to prison and exiled from the outside world. In prison, the defendant is processed and may eventually meet the so-called "Jailhouse Lawyer," *who tells him of his right to appeal*. The inmate immediately writes a letter to the trial judge, *whose clerk either disregards it or sends the defendant a reply telling him that his appeal did not meet procedural requirements, i.e., it was not filed within the thirty-day time period.*

> "Whereas the wealthy defendant, who has retained counsel at trial and the resources to retain him on appeal, will be advised by his lawyer, who is aware of his client's financial situation, the indigent defendant receives no such advice from either his trial attorney, who knows his client cannot afford to retain him on appeal, or the Court." (Emphasis supplied.)

All of the foregoing is the creation of counsel. The record does not justify such expressed offense to the Ohio bar, its trial judges, or the Ohio courts and their employees. The petition for writ of habeas corpus which is before us appears to have been prepared by the counsel who thus appealingly hypothesizes. He was appointed by the District Judge to assist Goodwin's effort for relief. The truth could have been obtained easily from Goodwin. I set out, preliminarily, what the petition before us *does not contain.*

1) There is no claim that Goodwin was innocent of the rape for which he was convicted.

2) There is no claim that there was anything unfair in his trial.

3) It points to nothing that occurred at his trial which would call for reversal of his conviction if a plenary appeal had been, or now would be, accorded him.

4) There is no allegation that the counsel retained for him by his mother conducted otherwise than a brilliant defense of petitioner.

5) There is no assertion that Goodwin desired to appeal or ever told his lawyer of such a desire.

6) There is no claim that Goodwin ever told anyone that he was an in-

digent at the time he was sentenced.[1]

Goodwin's counsel's brief to this Court contains the following allegations which are without support by any allegation of the petition signed by Goodwin:

a) "Petitioners retained counsel *refused* to represent petitioner further unless petitioner paid him additional fees for his services."

b) "Because neither petitioner nor his mother had the financial resources to pay retained counsel, petitioner, an indigent, untrained in the law, was without counsel during the critical post trial period." There is in the petition an allegation that petitioner, after trial, was without funds, but no allegation that his mother, who had paid for his trial, was without funds to pay for an appeal

c) "Petitioner only knew that he wanted to have his case reconsidered by the trial court or have it reviewed by a higher court."

The Ohio Attorney General's motion to dismiss contained the following allegations which have not been denied.

1) Petitioner's first post-conviction activity was an application for habeas corpus relief in the Ohio courts, made in the month of May, 1964. Denial of this petition in one of the Ohio Courts of Appeals was appealed to the Supreme Court of Ohio where he had a hearing before a Master Commissioner on January 19, 1965. The Supreme Court affirmed. *This petition made no claim that he had lost his right to appeal through indigency or ignorance.*

2) On October 28, 1965, he filed a petition to vacate his sentence under the Ohio Post-Conviction Remedy, Sec. 2953.21. In this proceeding, he was represented by a member of the law faculty of the University of Cincinnati. A hearing was had in open court on this petition and it was denied. *No appeal was taken from such denial.* Under an Ohio statute, § 2953.23, for good cause shown, successive petitions for relief under § 2953.21 may be entered. Denial of relief under § 2953.21 may be appealed. This petition like its predecessor, made no claim that he had lost his right to appeal through indigency or ignorance.

3) On November 22, 1966, Goodwin made a motion for leave to take a delayed appeal and for appointment of counsel in an Ohio appellate court. *This was the first time or occasion in which Goodwin asserted that indigency and ignorance frustrated his exercise of the right to appeal* granted him by Ohio Revised Code § 2953.05. This section also provides that after expiration of the thirty day period on appeal can be filed, but only by leave of court. This application was denied on January 23, 1967. A petition for reconsideration was filed and was denied on September 28, 1967.

1. Shortly before the oral argument of this cause in this Court, there was received in the Clerk's office a copy of a paper entitled "Application for a Writ of Habeas Corpus." This had been forwarded by Goodwin from prison and apparently it is a Xerox copy of the application for writ of habeas corpus filed in 1964 in one of the Ohio courts. He advised the clerk that this was filed not as an application to this Court, but merely as part of the record of his efforts in the Ohio courts. It was obviously filed without the knowledge of his appointed counsel.

This paper does suggest that the attorney who defended him at his trial did not do so properly, and attacks the sufficiency of the evidence upon which he was convicted. It does not, however, assert that Goodwin desired to appeal nor that he ever told anyone of such a desire. Neither does it claim that any officer of the State of Ohio, judicial or otherwise, knew or was told that Goodwin was an indigent.

4) Thereupon, Goodwin appealed from such denial to the Ohio Supreme Court, upon which appeal he was represented by a member of the law faculty of Ohio State University, and a practicing lawyer of Columbus, Ohio. A hearing on such appeal was held before the Master Commissioner on January 25, 1968. The motion for leave to appeal was denied by the Ohio Supreme Court on February 14, 1968.

5) On August 2, 1968, the petition before us was filed in the District Court for the Southern District of Ohio, Eastern Division. Counsel was appointed to represent him and he has been permitted to prosecute his petition and this appeal in forma pauperis.

The United States Supreme Court decisions which appellant now contends require Ohio to grant and entertain a plenary appeal from his conviction are Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); and Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L. Ed.2d 811 (1953). None of them fit the case at bar, factually or procedurally, and I believe it correct to say that no decision of the Supreme Court of the United States has spoken on the problem before us. Neither our present Rule 32(a) (2), F.R.Crim.P., nor its predecessor, Rule 37(a) (2), F.R.Crim.P., can be read as setting out a procedure to which every state must conform, or have conformed to in the past, or be charged with depriving a convicted criminal of his Fourteenth Amendment rights. No doubt such rule has among its purposes the elimination of the kind of belated claims that we deal with here. I believe that by Smartt v. Bomar, 340 F.2d 593 (6th Cir.1965), and Horton v. Bomar, 335 F.2d 583 (6th Cir.1964), this Circuit has held that a state which grants a right of appeal is privileged to set the time in which it must be exercised, and is not required to advise an accused who is represented by retained counsel that

he has such right and instruct him on how to exercise it. The same holding was made by the Seventh Circuit in Victor v. Lane, 394 F.2d 268, 269 (7th Cir. 1968); by the Fifth Circuit in Pate v. Holman, 341 F.2d 764, 775 (5th Cir. 1965); and by the Second Circuit in United States ex rel. Bjornsen v. LaVallee, 364 F.2d 489 (2nd Cir.1966), cert. denied, 386 U.S. 998, 87 S.Ct. 1313, 18 L.Ed.2d 351, rehearing denied, 387 U.S. 915, 87 S.Ct. 1693, 18 L.Ed.2d 641.

When Goodwin was imprisoned, the procedure employed conformed to the law of Ohio, as announced by its Supreme Court and as enacted by its legislature; so, also, did it conform to the law announced and approved by every United States Court of Appeals which had occasion to pass upon it—the Second, Fifth, Sixth and Seventh Circuits. I look in vain for any language in the United States Constitution offended by the continued imprisonment of Goodwin.

The Second Circuit has now, by a divided court, turned away from *Bjornsen* by its 1969 decision in United States ex rel. Smith v. McMann, 417 F.2d 648, cert. denied, 397 U.S. 925, 90 S.Ct. 929, 25 L.Ed.2d 105. Although entitled to our respect, it does not control us. I find the dissenting opinion of Judge Friendly, in which Judges Lumbard and Moore join, the better reasoned. Judge Friendly states:

"Whether the majority's ruling rests on the equal protection clause of the Fourteenth Amendment, on the Sixth Amendment's guarantee of the right to the assistance of counsel as incorporated in the due process clause of the Fourteenth, or on the due process clause of the Fourteenth *simpliciter*, Smith is not entitled to relief unless *the State* deprived him of his constitutional rights." 417 F.2d at 657.

And further:

"I would not deny that a state's duty may sometimes be so compelling that continued inaction can fairly be regarded as violating the Fourteenth Amendment. But I see no justifica-

tion for holding that in 1959 New York should have perceived a constitutional duty on its part to make certain that a convicted defendant *whom it had no reason to believe to be indigent* should be advised what New York would do for him if he were." (Emphasis supplied.) 417 F.2d at 658.

Reference is made in *Henderson, supra,* to "the trend of ,recent decisions." 426 F.2d at 154. Respectfully, I observe that this "trend" is so burdening the lower federal courts with meritless claims as to portend impairment of the continued usefulness of such courts in our total governmental structure. This "trend" continues to invite convicted state prisoners to take a "flyer" on another run over the course in the state courts and then one or more trips at all

levels of the federal judiciary.[2] All of this without any reference to whether those who crowd our dockets are other than vicious felons.

The Courts of Ohio had, and have, the power to grant Goodwin a delayed appeal and equip him with counsel and a transcript which, if there were such, would expose the wrong of his conviction. Considering that even in his now address to us he does not even suggest that he did not commit the crime of which he was convicted or that his trial was otherwise than eminently fair, why are we unable to grant finality to Ohio's order denying a delayed appeal?

With great respect for Judge Medina's contentions in *McMann,* it seems to me he portrays the kind of thing we are

2. The burdens of these matters may be portrayed by the history of the landmark case of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In 1955 Townsend was convicted of first degree murder upon jury trial held in the Criminal Court of Cook County, Illinois. His conviction was affirmed by the Supreme Court of Illinois, and later the United States Court of Appeals for the Seventh Circuit affirmed a District Court denial of a habeas corpus petition. Now, fifteen years after the original trial, Townsend's conviction awaits finality. In the intervening years Townsend's charges of constitutional deprivation have been considered and reconsidered approximately 20 times by various levels of state and federal judicial authorities. We set them out as follows:

Conviction affirmed, People v. Townsend, 11 Ill.2d 30, 141 N.E.2d 729, 69 A.L.R.2d 371 (1956), cert. den., Townsend v. People of State of Illinois, 355 U.S. 850, 78 S.Ct. 76, 2 L.Ed.2d 60 (1957); post-conviction relief denied in Illinois state trial and Supreme Courts, cert. den., Townsend v. People of State of Illinois, 358 U.S. 887, 79 S.Ct. 128, 3 L.Ed.2d 115 (1958); post-conviction relief in federal District Court denied, appeal dismissed, United States ex rel. Townsend v. Sain, 265 F.2d 660 (CA 7, 1958), rev'd and remanded, Townsend v. Sain, 359 U.S. 64, 79 S.Ct. 655, 3 L.Ed. 2d 634 (1959); petition dismissed in District Court, aff'd. United States ex rel. Townsend v. Sain, 276 F.2d 324 (CA 7, 1960), cert. granted, Townsend v. Sain,

365 U.S. 866, 81 S.Ct. 907, 5 L.Ed.2d 859 (1961), rev'd. and remanded, Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); decision of District Court ordering new trial rev'd., United States ex rel. Townsend v. Ogilvie, 334 F.2d 837 (CA 7, 1964), cert. den. Townsend v. Ogilvie, 379 U.S. 984, 85 S.Ct. 683, 13 L.Ed.2d 574 (1965); motion to allow amendment of petition denied in District Court, aff'd., United States ex rel. Townsend v. Ogilvie, 360 F.2d 925 (CA 7, 1966), cert. den., Townsend v. Ogilvie, 385 U.S. 938, 87 S.Ct. 304, 17 L.Ed.2d 218 (1966).

In addition, there is Warden v. Perry, wherein, on February 10 the Seventh Circuit denied the State of Illinois' petition for writ of prohibition which sought to foreclose further processing of recent applications for habeas corpus relief in the District Court. On June 22, 1970, the United States Supreme Court denied Illinois' application for certiorari. There also remains pending in the Seventh Circuit Townsend's pro se application for a writ of mandamus to command District Judge Perry to proceed with his request for habeas corpus relief. There now remain pending in the United States District Court at Chicago one or more petitions for habeas corpus relief by Townsend. I am advised that consideration will be given these shortly. Townsend is processing these matters with appointed counsel. Thus the Townsend case, which involves a murder committed in 1953, awaits finality of judicial process.

dealing with. He says, referring to the petitioner there:

"Then (about four years after Smith's unappealed conviction) * * * *Joel Smith hit upon the claim* * * * that he was indigent and was not told by his lawyer or anyone else that he could appeal at the expense of the state." 417 F.2d 651.

In a later proceeding, after his first *coram nobis* was unsuccessful, Judge Medina tells us:

"In the petition Joel Smith again asserted that he had been deprived of his right of appeal because of the delinquency of his counsel, but he coupled this *allegation with a new claim* that his right to appeal had been frustrated by the refusal of the prison authorities to permit him to use law books until after the time to appeal had expired." 417 F.2d at 651.

It will be seen that first Joel Smith—four years after his conviction—"hit upon the claim" that no one told him that he could have an appeal. Not initially successful with such approach, he took a new direction, inferring that he did know of his right to appeal within the time in which he could have exercised it, but that his efforts to do so were frustrated by the prison officials who refused to permit him to use law books "until after the time to appeal had expired." I am unable to find any words in the United States Constitution that command our continued pampering of this type of litigant.

I do not agree that as stated by the majority in United States ex rel. Smith v. McMann, *supra*, that Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L. Ed.2d 811, holds that the United States Constitution,

"imposes upon the State a duty to warn every person convicted of crime of his right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state, if he is indigent." 417 F.2d at 654.

and that such would be the rule even if the accused had been represented by retained counsel, and not such counsel, any officer of the state, judge or otherwise, had been told that the accused wishes to appeal and is, or has become, an indigent.

In Douglas v. California, it was stated:

"The record shows that *petitioners requested, and were denied,* the assistance of counsel on appeal, even though *it plainly appeared they were indigent.*" (Emphasis supplied.) 372 U.S. 354, 83 S.Ct. 815.

Such is not the case before us, nor was it the case before the Second Circuit in United States ex rel. Smith v. McMann, *supra.*

In conclusion, I think it appropriate to repeat here an admonition given, some years ago, to a meeting attended by United States District Judges.

"We must never tolerate wrong or despicable police or judicial methods by officers of courts of any state, nor by federal officers. However, in the exercise of the very great discretion reposed in you, may I urge that you have in mind that the Great Writ was not conceived merely to provide opportunity for exercises in abstract and quixotic dialectics, nor unpragmatic vindication of claims to constitutional protection by vicious felons.

"Let us, if we can, avoid being submerged in these exercises so that society's confidence in our ability to protect it will not be destroyed." 33 F. R.D. 493, 505 (1963).

I would affirm.