*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0316P (6th Cir.)
File Name: 01a0316p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

EARL RALPH JACOBS,
  *Petitioner-Appellant,*

  *v.*

GARY MOHR, Warden,
  *Respondent-Appellee.*

No. 99-3565

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 98-00008—Edmund A. Sargus, Jr., District Judge.

Submitted: August 2, 2001

Decided and Filed: September 10, 2001

Before: CLAY and GILMAN, Circuit Judges; WISEMAN,
District Judge.[*]

———————————

## COUNSEL

**ON BRIEF:** Thelma Thomas Price, OFFICE OF THE
ATTORNEY GENERAL, CORRECTIONS LITIGATION

———————————

[*]The Honorable Thomas A. Wiseman, Jr., United States District
Judge for the Middle District of Tennessee, sitting by designation.

1

SECTION, Columbus, Ohio, for Appellee.    Earl Ralph Jacobs, Chillicothe, Ohio, pro se.

---

**OPINION**

---

CLAY, Circuit Judge.    Petitioner, Earl Ralph Jacobs, appeals from the district court's judgment dismissing Petitioner's application for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254, as barred by procedural default. For the reasons set forth below, we **AFFIRM**.

**BACKGROUND**
**Procedural History**

On January 2, 1998, Petitioner filed the instant application for a writ of habeas corpus in the United States District Court for the Southern District of Ohio.   Petitioner's application sought to challenge his 1962 Ohio conviction for first-degree murder in connection with Petitioner's fatal shooting of a police officer, for which Petitioner was sentenced to life imprisonment.   As grounds for relief, Petitioner asserted that the confession upon which his conviction is allegedly based, "is neither handwritten[,] signed, or notarized in violation of Criminal rules of evidence."   In a written opinion and order, the district court denied Petitioner's habeas corpus petition as procedurally defaulted.   Applying the four-part test of *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), the court noted that Petitioner had raised the issue in his petition for post-conviction relief, and had appealed the trial court's unfavorable decision to the Ohio Court of Appeals, which dismissed the appeal as untimely.   However, the court found that Petitioner failed to appeal the court of appeals' dismissal to the Ohio Supreme Court.    Thus, the district court concluded that Petitioner had defaulted his claim.   Because Petitioner had failed to allege any cause for his default, and because Petitioner did not argue that he was actually innocent nor did the record support a finding of actual innocence, the district court dismissed Petitioner's habeas claim.

Subsequently, the district court denied Petitioner's request for a certificate of appealability.  This Court also denied Petitioner's request for a certificate of appealability; however, in an order dated March 14, 2000, upon consideration of Petitioner's request for rehearing, this Court granted a certificate of appealability with respect to the following issue: "whether Jacob's [sic] due process claim regarding the admission of his confession at trial has been procedurally defaulted by virtue of appellate counsel's failure to file an appeal of his behalf."  As will be explained *infra*, consideration of this issue requires us to first examine whether Petitioner procedurally defaulted this ineffective assistance of counsel claim.

**Facts**

On August 10, 1962, a grand jury sitting in Logan County, Ohio, indicted Petitioner for first-degree murder in connection with the shooting death of a police officer, West Liberty Marshall Sherman Ricketts.  Attorney J. Ewing Smith was appointed as counsel for Petitioner on August 16, 1962. Petitioner entered a plea of not guilty; a jury trial was held from October 23, 1962 through November 1, 1962, at which time the jury returned a verdict of guilty.  Thereafter, on November 8, 1962, Petitioner was sentenced to life imprisonment at the Ohio State Penitentiary in Columbus, Ohio.

No timely appeal as of right was filed by Petitioner following his November 1962 conviction; however, on June 7, 1978, proceeding *pro se*, Petitioner filed a motion for leave to appeal to the Ohio Third District Court of Appeals. In his memorandum in support of his motion, Petitioner raised nine allegations of error.  The two allegations of error raised by Petitioner relevant for purposes of this appeal are as follows:

(6) The prosecution introduced a purported "confession" of this Appellant, purportedly acquired hours after the arrest of Appellant and early on in the time of his containment in the Rutan Hospital.  The

Appellant, in the first instance, was unconscious for many days and under the continuing influence of very heavy sedatives, specifically to include narcotics, administered as the result of the necessity of extremely painful surgery, and any confession thereupon obtained was totally invalid. And in the second instance, the alleged confession was not a knowing, willing and intelligent statement inasmuch as it was obtained without any showing whatsoever that it was highly incriminatory, and as is facially shown by the "confession" purportedly signed by this Appellant. Thereby, the Appellant's rights to fundamental fairness, to due process of law, against self-incrimination and to a fair trial before an impartial jury, guaranteed by *Amendments V* and *VI*, *United States Constitution*, and applicable in such cases made and provided to the State, *Amendment XIV*, were denied.

(9) The trial court erred in failing to advise that the Appellant had an absolute right to undertake a timely appeal to seek review of the judgment of conviction rendered and sentence thereupon imposed and simultaneously, to have the assistance of counsel in perfecting, briefing and arguing the said appeal, it [being] a first appeal as of right, and guaranteed pursuant to the *Ohio Constitution*, *Article IV*, *§ 3(b)(1)(f)*, *§ 3(B)(2)*, *ORC 2953.02-2953.05*, and the procedural rules of court then existing and since superseded by *Rule 32(A)(2)*; *Rule 44(A)*, *Ohio Rules of Criminal Procedure*; *Rule 4(B)*, *Ohio Rules of Appellate Procedure*.

(J.A. at 122-23.) Petitioner added the following in reference to his ninth allegation of error.

While it is clear that there is no Federal Constitutional right to appeal *per se*, it is equally clear that if such rights are established as a matter of state law, constitutional, statutory, decisional or procedural, the denial thereof, be it by chance or by design, triggers the protection afforded a putative defendant in a state court, and further, one who as is conclusively shown herein is indigent, counsel-less,

that Petitioner was afforded an evidentiary hearing regarding the voluntariness of his confession, and that Petitioner failed to challenge by way of further appeal the trial court's decision at the evidentiary hearing. Therefore, even if attorney Smith had perfected Petitioner's appeal raising the voluntariness of Petitioner's confession as an issue, and had the Ohio Court of Appeals found the issue persuasive, the court likely would have remanded for the very evidentiary hearing to which Petitioner was ultimately afforded. Thus, Petitioner has not demonstrated prejudice for purposes of finding a violation under *Strickland*. *See Morrow,* 977 F.2d at 229 (holding that under *Strickland*, the issue becomes whether counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of a probable victory").

## CONCLUSION

Petitioner procedurally defaulted his ineffective assistance of counsel claim in relation to his counsel's failure to file a direct appeal, such that this claim cannot be used as cause to excuse Petitioner's defaulted independent federal claim as raised in his habeas petition. Accordingly, we **AFFIRM** the district court's judgment dismissing Petitioner's application for a writ of habeas corpus.

of armed robbery and who had been represented at trial by retained counsel, wished to prosecute an appeal and was no longer able to afford a lawyer to take such an appeal on his behalf." . . ."[I]t is our opinion that this court's decision in *State v. Sims* should not be given retroactive application to the cause under review here which dates back to 1964."). Accordingly, where the State of Ohio, in 1962, did not require a trial court to inform a convicted defendant of his right to appeal and of his right to appointed counsel should he not be able to afford a lawyer, it logically follows that an appointed counsel cannot be held to a standard of *sua sponte* having to inform his convicted client of the right to appeal and his right to continued appointed counsel.[2]

We thus conclude that the legal climate in 1962 was such that it cannot be said that the performance of Petitioner's counsel fell below an objective standard of reasonableness by failing to *sua sponte* inform Petitioner of his right to appeal and to continue his court-appointed representation of Petitioner through the appellate process. Moreover, even if attorney Smith's performance was below an objective standard of reasonableness, Petitioner was not prejudiced by Smith's failure to perfect a direct appeal. Petitioner was granted an evidentiary hearing on the issue of the voluntariness of his conviction, pursuant to the Ohio Court of Appeals directive, and following the hearing, the trial court – via a different judge than that who presided over Petitioner's criminal trial – made a detailed finding as to why the confession was not coerced in violation of the Constitution. Although it appears that not all of the relevant witnesses were available to testify at the evidentiary hearing, the fact remains

---

[2]The Ohio Rule of Criminal Procedure 32(B), which requires that trial court inform a convicted defendant of his right to appeal and to appointed counsel, does not aid Petitioner in this case inasmuch as the Rule was not adopted until July 1, 1973, *see* Ohio R. Crim. P. 32; and, as Respondent argues in its brief on appeal, the Ohio Supreme Court Code of Professional Responsibility, although providing that trial counsel should continue on through the appeal by so advising his client, also does not aid Petitioner inasmuch as this provision was not adopted until 1986.

unlearned in the law and confined to custody, by the Due Process and Equal Protection Clauses, *Amendments V*, *XIV*, *United States Constitution*. Where, as here, those rights existed as a matter of state law, the trial judge was under an obligation to advise of their existence; this he did not do.

(J.A. at 124.)

The State of Ohio submitted a brief in opposition to Petitioner's motion for leave to appeal, wherein the State argued as follows regarding the two relevant allegations of error:

SIXTH ASSIGNMENT OF ERROR

IT WAS NOT ERROR FOR THE TRIAL COURT TO ADMIT INTO EVIDENCE A WRITTEN STATEMENT OF THE CONFESSION OF THE DEFENDANT AND SIGNED BY THE DEFENDANT WHEN THERE WAS NO COERCION INVOLVED WHATSOEVER; THE DEFENDANT WAS NOT DRUGGED OR DRUNK, BUT WAS FULLY CONSCIOUS AND AWARE OF WHAT HE WAS THEN DOING; AND THE PROSECUTOR WARNED THE DEFENDANT THAT HE NEED SIGN NOTHING BUT THAT IF HE DID IT COULD AND WOULD BE USED AGAINST THE DEFENDANT.

NINTH ASSIGNMENT OF ERROR

IT WAS NOT ERROR FOR THE TRIAL COURT TO FAIL TO INSTRUCT THE CONVICTED DEFENDANT OF HIS ABSOLUTE RIGHT TO APPEAL AND TO HAVE COUNSEL APPOINTED FOR HIM TO AID HIS APPEAL IF FOUND INDIGENT WHEN NEITHER THE U.S. CONSTITUTION NOR THE APPLICABLE CASE LAW REQUIRED THE TRIAL JUDGE TO GIVE SUCH INSTRUCTIONS.

(J.A. at 170-71.) The Ohio Court of Appeals thereafter denied Petitioner's motion for leave to appeal as "not to be well taken for the reasons set forth in [the] brief of the State of Ohio." (J.A. at 215.) Petitioner filed an application for reconsideration of the court's decision, as well as a motion to certify because of a conflict with other districts within the court of appeals. The Ohio Third Appellate District denied the application for reconsideration and overruled the motion to certify without opinion. On August 29, 1978, Petitioner filed a "notice of appeal" with the Supreme Court of Ohio challenging the Ohio Court of Appeals decision denying him leave to appeal. The Supreme Court of Ohio *sua sponte* dismissed Petitioner's appeal for want of prosecution.

On July 31, 1992, Petitioner filed a Petition for Post-Conviction Relief with the Logan County Court, wherein Petitioner claimed that

> he was not afforded a fair trial, in accordance with his rights as guaranteed by the Fifth, Sixth and Fourteenth Amendment[s] to the Constitution of the United States of America and the Ohio Constitution in that he was not afforded effective assistance of counsel, in violation of Ohio Rules of Criminal Procedure, Rule # 5(A)(1)(2) and Rule #44; which requires [sic] Assignment of Counsel; and the defendant further stipulates that he was not advised of his "Miranda" rights required by law, and "Escobedo" rule.
>
> Further, defendant was never advised of his "Right to Appeal" and to obtain his trial transcript by some means.

(J.A. at 255.) In his memorandum in support of his petition, Petitioner argued at length regarding his allegations of error, arguing at one point:

> The defendant will further submit that his attorney appointed (J. Ewing-Smith) for trial, See Journal Entry 4476, *and all available court records fail to show that this attorney protected his Right of <u>Direct Appeal</u> by filing a <u>notice of appeal</u>, as required by law, and in that*

after Petitioner's conviction. Therefore, his counsel's performance in 1962 cannot be held to that standard. *See Strickland*, 466 U.S. at 689 ("The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances.").

Likewise, the climate of the law in the State of Ohio at the time of Petitioner's conviction does not suggest that Petitioner's counsel acted unreasonably. Specifically, in 1962, it was well settled in Ohio that "an indigent convicted defendant had no right to be informed of his right to appeal, or of his right to have counsel appointed to perfect that appeal." *See State v. Leroy*, 283 N.E.2d 136, 142 (Ohio St. 2d 1972) (O'Neill, CJ., dissenting). However, in 1971, the Supreme Court of Ohio held that

> in the absence of evidence in the record upon which it could be determined that an indigent convicted defendant knowingly and intelligently waived his right of direct appeal and his right to court-appointed counsel for direct appeal prior to the expiration of the time in which such an appeal could be taken, it was error for the Court of Appeals to dismiss the motion for leave to appeal without making a factual determination.

*State v. Sims*, 272 N.E.2d 87, 91 (Ohio St. 2d 1971). Therefore, *Sims* changed the state of the law as it had existed in 1962.

The issue then becomes whether *Sims* was given retroactivity such that it may be plausible to hold attorney Smith to this standard pronounced about ten years after Petitioner's conviction. In *State v. Leroy*, the Ohio Supreme Court had before it the question of whether to apply *Sims* retroactively, and the court answered the question in the negative. *See* 283 N.E.2d 136, 141 & 145 (Ohio St. 2d 1972) ("Although the rule stated in *Sims* is sound and just, we do not believe that the United States Constitution required an Ohio Common Pleas judge in 1964 to find out whether [a defendant], who had been convicted by a jury on three counts

discriminates against some convicted defendants on account of their poverty." However, the Court did not expressly speak to the trial court's responsibility, or the responsibility of counsel, to notify a convicted defendant of his right to appeal or to have counsel appointed for him. It was not until the Court's later decision in *Douglas v. California*, that the Supreme Court spoke on the issue of appellate counsel:

> In *Griffin v. Illinois*, 351 U.S. 12 (1956), we held that a State may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty." There, . . . the right to a free transcript on appeal was in issue. Here the issue is whether or not an indigent shall be denied the assistance of counsel on appeal. In either case the evil is the same: discrimination against the indigent. For there can be no equal justice where the kind of an appeal a man enjoys depends on the amount of money he has.

372 U.S. 353, 355 (1963) (citations and internal quotation marks omitted).

Therefore, it was not until 1963 – specifically March 18, 1963 – four months after Petitioner's conviction, that the climate of the federal law was such that a reasonable attorney who was representing an indigent defendant at trial by appointment would have had reason to believe that he had a duty to continue his representation on appeal. In other words, at the time of Petitioner's conviction, there simply was no federal pronouncement that would have led a reasonable court-appointed attorney to believe that he had a constitutional duty to *sua sponte* inform Petitioner of his right to appeal and to continue representation by filing such an appeal. Although it is true that in the aftermath of *Douglas*, this Court held that the Constitution is violated if a convicted defendant is denied an appeal "by reason of his lack of knowledge of his right and the failure of his counsel or the court to advise him of his right to appeal with the aid of counsel[,]" *see Goodwin v. Cardwell*, 432 F.2d 521, 522-23 (6th Cir. 1970), this law was not pronounced until eight years

*sense was denied the effective assistance of counsel?* The records fail to show any "Notice of Appeal" was filed, therefore, cannot be disputed. The landmark case which must be examined to determine whether or not the petitioner was afforded effective assistance of counsel is, Beasley v. United States, 491 F.2d 687 (1974); wherein the United States Court of Appeals for the (6th Cir) judge [sic] Celebreeze held:

> "Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law, and must, conscientiously protect his client,s [sic] interest, undeflected by conflicting considerations, and defense counsel must investigate all apparently substantial defenses available to the defendant, and must assert them in the proper timely manner."

It is submitted that the trial counsel (J. Ewing Smith) has previously determined that he committed no errors, therefore, it was pointless to file any Notice of appeal? Such is not the function of any trial counsel, and violates the [sic] Due Process and Equal Protection, and also, that had petitioners [sic] attorney exercised the ordinary diligence and skills mandated by the Judicial Code and the Sixth Circuit Court Court [sic] of Appeals, the records would have been transcribed, and a Notice of Appeal would have been filed.

(J.A. at 260-61, emphasis added .) On August 5, 1992, the Logan County Prosecuting Attorney filed a motion to dismiss Petitioner's petition for post-conviction release. Logan County Judge Mark S. O'Connor entered a judgment treating the prosecutor's motion to dismiss as a motion for summary judgment, and ordered that each party had until a certain date to submit materials in connection with the motion. Petitioner filed a memorandum in opposition to the prosecutor's motion, and the prosecutor filed supplements to his motion.

On May 21, 1993, Ohio Public Defender Wendie A. Gerus, entered her appearance as counsel for Petitioner pursuant to

an April 20, 1993 order of the Logan County Court. Gerus filed a supplemental memorandum in opposition to the prosecutor's motion to dismiss, wherein Gerus argued that Petitioner "was deprived of due process of law and effective assistance of counsel as the result of the failure of either the trial court or his trial attorney to notify him of his right to appeal. As a result, [Petitioner] has effectively been deprived of an opportunity to appeal his conviction and sentence of life imprisonment."

The Logan County Court was not persuaded by Petitioner's petition for post-conviction relief, and on October 12, 1993, the court entered an order denying the petition. Proceeding *pro se,* Petitioner then filed a notice of appeal with the Third District Court of Appeals, challenging the Logan County Court's denial of his petition for post-conviction release. In doing so, Petitioner raised the following allegations of error:

### FIRST ASSIGNMENT OF ERROR

THE COURT OF COMMON PLEAS ERRED IN RULING THAT THE ISSUES RAISED IN THE PETITION FOR POST CONVICTION WAS [SIC] THE SAME ISSUES RESOLVED BY THIS COURT ON APPEAL. THE BRIEF IN THE APPEAL WAS IMPROPERLY BEFORE THE COURT WHICH LACKED AUTHORITY TO RULE.

### SECOND ASSIGNMENT OF ERROR

THE COURT ERRED IN PERMITTING THE USE OF THE CONFESSION MADE WITHOUT BENEFIT OF COUNSEL WHICH WAS USED DURING THE PRELIMINARY HEARING AND TRIAL WITHOUT FIRST MAKING ANY EFFORT TO ASCERTAIN THE VOLUNTARINESS OF THE CONFESSION.

### THIRD ASSIGNMENT OF ERROR

THE COURT ERRED IN FAILING TO APPOINT COUNSEL DURING THE CRITICAL STAGE OF THE

U.S. at 452. We hold in the alternative, however, that procedural default aside, we do not find the performance of Petitioner's counsel ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), so as to serve as cause to excuse the procedural default of his independent federal claim.

**B.    Whether Petitioner's Due Process Claim Regarding the Admission of his Confession at Trial has been Procedurally Defaulted by Virtue of his Appellate Counsel's Failure to File an Appeal on his Behalf**

In order to demonstrate a claim for ineffective assistance of counsel, a defendant must establish that his counsel's performance was deficient under an objective standard of reasonable performance, and that there is a reasonable probability that his counsel's errors prejudiced the outcome of the proceedings against him. *Strickland,* 466 U.S. at 686. "A reasonable probability is a probability sufficient to undermine confidence in the outcome;" however, it is a less demanding standard than "more likely than not." *Id.* at 693-94. The issue becomes whether counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of a probable victory." *See United States v. Morrow,* 977 F.2d 222, 229 (6th Cir. 1992) (*en banc*).

Because "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances[,]" *Strickland*, 466 U.S. at 689, it is necessary that the Court look at the legal climate in 1962 to determine whether trial attorney J. Ewing Smith's actions in failing to continue representing Petitioner post-conviction, despite the trial court's failure to instruct Smith to do so or to notify Petitioner of the appeal process, can be considered below an objective standard of reasonableness. As to federal law, at the time of Petitioner's conviction, the Supreme Court had decided *Griffin v. Illinois*, 351 U.S. 12, 18 (1956), wherein the right to a free transcript on appeal was at issue, and the Court held that a state that grants appellate review cannot do so "in a way that

*State v. Waddy*, No. 96APA07-863, 1997 WL 318032, at *3 (Ohio Ct. App. June 10, 1997) (unpublished) (holding that the defendant's claim of ineffective assistance of counsel was barred by Ohio's doctrine of *res judicata* where the defendant could have filed a motion for rehearing of his claim in the Ohio Supreme Court after failing to prevail on the claim in the Ohio Court of Appeals) (citing *State v. Cole*, 443 N.E.2d 169 (Ohio 3d 1982); *State v. Perry,* 226 N.E.2d 104 (Ohio 1967)); *see also Smith v. Anderson*, 104 F. Supp. 2d 773, 794 (S.D. Ohio 2000) ("The failure to raise on appeal a claim that appears on the face of the record constitutes a procedural default under Ohio's doctrine of *res judicata*.") (citing *Cole*, 443 N.E.2d at 171). The third *Maupin* factor is met because Ohio's doctrine of *res judicata* as a procedural bar is regularly applied by the Ohio courts. *See Smith,* 104 F. Supp. 2d at 793 (finding that Ohio's doctrine of *res judicata* as a procedural bar was an independent and adequate state ground under *Maupin* inasmuch as the Ohio appellate courts "do not ignore or arbitrarily deny Ohio's procedural bars, including the *Perry* rule, on a regular basis").

Inasmuch as the first three *Maupin* factors are met, Petitioner must demonstrate "cause" as to why he failed to appeal the dismissal of his claim. Petitioner has not demonstrated any basis upon which this Court may find cause for his decision not to appeal the issue of his counsel's performance in failing to file an appeal. Indeed, even when Petitioner filed his writ of habeas corpus in federal court, he raised the single issue of whether his confession was properly admitted at trial. In other words, Petitioner did not see fit to raise this claim of ineffective assistance of counsel in federal court. It is only because of this Court's issue certified on appeal, as well as the mandates of *Carpenter*, that the Court is addressing this claim now.

Because Petitioner procedurally defaulted his claim of ineffective assistance of counsel, under *Carpenter* this Court is precluded from considering this issue as cause to excuse Petitioner's procedural default of his due process claim regarding the admission of his confession at trial. *See* 529

PROSECUTION AND THE PRELIMINARY HEARING WHEN THE RIGHT TO COUNSEL WAS NOTICED BY THE COURT.

(J.A. at 482.) The Third District Court of Appeals reversed the Logan County Court's dismissal as to Petitioner's second allegation of error, the voluntariness of Petitioner's confession. In its opinion submitted in connection with its ruling, the court of appeals noted that Petitioner claimed that he was denied his right to appeal by the trial court's failure to inform him of this right as well as the right to court-appointed counsel; however, the court was not persuaded by Petitioner's claim inasmuch as the case upon which Petitioner relied, *State v. Sims*, 272 N.E.2d 87(Ohio St. 2d 1971), was limited in application by *State v. Leroy*, 283 N.E.2d 136 (Ohio St. 2d 1972), such that *Sims* was not to be given retroactive application to a cause under review in which the time for filing a direct appeal had expired several years earlier.[1]

Pursuant to the court of appeals directive, the Logan County Court scheduled a hearing to be held on July 25, 1994, regarding the remanded issue; Petitioner was transported from the correctional facility for the hearing and represented himself *pro se*. Because Petitioner wanted to be represented by counsel, but did not desire Gerus as his attorney, the court adjourned the matter until such time that counsel could be appointed. Gerus was once again assigned to Petitioner's case, despite his objection, and the matter was eventually heard on May 23, 1995, after continuances were granted, in part so that Petitioner could be examined by a forensic psychiatrist at the expense of the state.

---

[1]The holding of *Sims* upon which Petitioner relies states that, in the absence of evidence in the record upon which it could be determined that an indigent convicted defendant knowingly and intelligently waived his right of direct appeal and his right to court-appointed counsel for direct appeal prior to the expiration of the time in which such an appeal could be taken, a court of appeals must make such a factual determination before it dismisses a motion for leave to appeal. *State v. Sims*, 272 N.E.2d 87, 91 (Ohio St. 2d 1971).

Following the hearing at which Petitioner was represented by counsel, the Logan County Court entered an order on September 7, 1995, finding that the statements made by Petitioner regarding his involvement in the shooting death of the police officer were "voluntary and that those statements, and the facts and circumstances surrounding those statements, were properly before the jury for the jury to determine what weight should be given to them. Accordingly, the petition is DENIED." Proceeding *pro se*, Petitioner filed a notice of appeal on October 16, 1995, claiming that attorney Gerus did not provide him with a copy of the court's September 7, 1995, order denying his petition until September 18, 1995. The Court of Appeals of the Third Appellate District dismissed the appeal on October 25, 1995, for want of jurisdiction inasmuch as the notice of appeal was filed outside the thirty day period as prescribed by Rule 4(A).

It does not appear that Petitioner appealed from the October 25, 1995, dismissal of his appeal; however, it does appear that at some point Petitioner filed a petition for a writ of habeas corpus in the Supreme Court of Ohio, which was dismissed *sua sponte* by that court on November 12, 1997. Inasmuch as a copy of this petition was not provided to the district court, nor to this Court, it is not clear what claims were raised in that proceeding.

## DISCUSSION

We review the district court's legal conclusions *de novo* and its factual findings for clear error. *See Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000). Because Petitioner filed his petition in 1998, his case is reviewed under the standards set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

At the outset, we note that when this Court issued its order on March 14, 2000, granting Petitioner's application for a certificate of appealability, the state of the law in this circuit under *Carpenter v. Mohr*, 163 F.3d 938 (6th Cir. 1998), *rev'd sub nom*, *Carpenter v Edwards*, 529 U.S. 446 (2000), was that when a habeas petitioner sought to assert ineffective

counsel claim with the court of appeals in relation to his trial counsel's failure to file a direct appeal of Petitioner's behalf. Although it is true that the court of appeals remarked on the trial court's failure to notify Petitioner of his right to appeal and his right to court appointed counsel, this does not suffice to meet the standards that Petitioner "fairly presented" his Sixth Amendment claim regarding his counsel's failure to file an appeal. *See McMeans*, 228 F.3d at 682.

In addition, an analysis under the four-part test of *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), indicates that Petitioner defaulted his ineffective assistance of counsel claim. The four factors a court is to consider to determine whether a claim has been procedurally defaulted under *Maupin* are as follows:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. [Fourth,] the petitioner must demonstrate under [*Wainwright v.*] *Sykes*, [433 U.S. 72 (1977)] that there was "cause" for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Id.* (citations omitted).

Because Petitioner could have raised the issue of ineffective assistance of counsel regarding his trial counsel's failure to file an appeal when Petitioner appealed the dismissal of his petition for post-conviction relief, and because Petitioner sought no further action in the Ohio Supreme Court, under Ohio law, the first and second *Maupin* factors are met. *See*

had petitioners [sic] attorney exercised the ordinary diligence and skills mandated by the Judicial Code and the Sixth Circuit Court Court [sic] of Appeals, the records would have been transcribed, and a Notice of Appeal would have been filed.

(J.A. at 260-61.)

Because Petitioner expressly relied upon case law from this circuit regarding a defendant's Sixth Amendment right to the effective assistance of counsel, phrased his claim in terms of the denial of a specific constitutional right, and alleged facts within the mainstream of constitutional law, Petitioner fairly presented this claim to the trial court in his petition for post-conviction relief. *See McMeans*, 228 F.3d at 681 (noting that a petitioner's claim may be considered "fairly presented" when he states his claim along these lines and supports the claim with this type of argumentation, while also noting that general allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that a specific constitutional right was violated). In addition, Petitioner's appointed counsel, Wendie Gerus, added in her brief in opposition to the prosecutor's motion to dismiss Petitioner's petition for post-conviction relief, that Petitioner "was deprived of due process of law and effective assistance of counsel as the result of the failure of either the trial court or his trial attorney to notify him of his right to appeal. As a result, [Petitioner] has effectively been deprived of an opportunity to appeal his conviction and sentence of life imprisonment[,]" (J.A. at 300-01), thereby further supporting the finding that Petitioner fairly presented this issue to the trial court when seeking post-conviction relief in 1992. *See id*.

However, a review of Petitioner's arguments on appeal to the Ohio Third District Court of Appeals, following the trial court's dismissal of his petition for post-conviction relief, does not indicate that he continued to make this argument regarding his counsel's performance. Accordingly, Petitioner failed to raise a Sixth Amendment ineffective assistance of

assistance of counsel as "cause" to excuse the procedural default of an independent federal claim, it was not necessary that the ineffective assistance of counsel claim itself be subjected to a procedural default analysis. *See id.* at 945. Applying this principle, the *Carpenter* court ruled that the ineffectiveness of the petitioner's counsel served as "cause" to excuse the procedural default of his separate sufficiency of the evidence claim. *See id.* However, the Supreme Court granted *certiorari*, and in an opinion issued on April 25, 2000 – about one month after this Court granted Petitioner's application for a certificate of appealability in this case – the Supreme Court reversed *Carpenter*, holding that an ineffective assistance of counsel claim asserted as "cause" to excuse the procedural default of another claim can itself be procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000).

The Supreme Court's decision in *Carpenter* is significant to the matter at hand inasmuch as the issue upon which the certificate of appealability was granted – whether Jacobs' due process claim regarding the admission of his confession at trial has been procedurally defaulted by virtue of appellate counsel's failure to file an appeal of his behalf – involves the use of an ineffective assistance of counsel claim as cause for excusing Petitioner's procedural default. Thus, under *Carpenter*, the record must indicate that the ineffective assistance of counsel claim was not procedurally defaulted. If the claim was procedurally defaulted, then Petitioner cannot use this claim as "cause" to excuse the procedural default of his independent federal claim that his confession was wrongfully used against him. We must therefore undertake an analysis of whether Petitioner defaulted the issue of whether his counsel was ineffective in failing to directly appeal his murder conviction. *See Carpenter*, 529 U.S. at 452.

Before moving on to that analysis, we note that the issue for appellate review actually involves an inquiry into whether Petitioner's *trial* counsel, J. Ewing Smith, was ineffective in failing to inform Petitioner of his opportunity to appeal his conviction, and to file such an appeal if Petitioner so desired,

inasmuch as the record does not indicate that Petitioner had appellate counsel as the issue framed in the certificate of appealability would suggest. Furthermore, because it is well settled that a convicted defendant has no constitutionally protected right to counsel in a state post-conviction proceeding, interpreting this Court's issue on appeal to be whether Petitioner's counsel at post-conviction (Wendie Gerus) was ineffective for failing to file an appeal from that ruling would be contrary to law. *See Cole v. Thompson*, 501 U.S. 722, 852-55 (1991) (citing *Wainwright v. Torna*, 455 U.S. 586 (1982) ("[W]here there is no constitutional right to counsel there can be no deprivation of effective assistance.").

### A. Whether Petitioner Procedurally Defaulted the Issue of Whether his Trial Counsel, J. Ewing Smith, was Ineffective in Failing to Advise or File a Direct Appeal of Petitioner's Murder Conviction

It is well settled that "federal courts do not have jurisdiction to consider a claim in a *habeas* petition that was not 'fairly presented' to the state courts." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citing *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987)). "A claim may only be considered 'fairly presented' if the petitioner asserted both the factual and legal basis for his claim to the state courts." *Id.* (citing *Franklin*, 811 F.2d at 325). Accordingly, we must first determine whether Petitioner fairly presented the claim that he was denied his Sixth Amendment right to the effective assistance of counsel by his trial counsel's failure to file an appeal on his behalf to the Ohio Courts.

Our review of the record indicates that Petitioner first argued that he was denied his right to the effective assistance of counsel in this regard when he filed his July 31, 1992, Petition for Post-Conviction Relief with the Logan County Court, wherein Petitioner argued that

he was not afforded a fair trial, in accordance with his rights as guaranteed by the Fifth, Sixth and Fourteenth Amendment[s] to the Constitution of the United States of America and the Ohio Constitution in that he was not

afforded effective assistance of counsel, in violation of Ohio Rules of Criminal Procedure, Rule # 5(A)(1)(2) and Rule #44; which requires [sic] Assignment of Counsel; and the defendant further stipulates that he was not advised of his "Miranda" rights required by law, and "Escobedo" rule.

Further, defendant was never advised of his "Right to Appeal" and to obtain his trial transcript by some means.

(J.A. at 255.) Significantly, in his memorandum in support of his petition, Petitioner argued as follows:

The defendant will further submit that his attorney appointed (J. Ewing-Smith) for trial, See Journal Entry 4476, and all available court records fail to show that this attorney protected his Right of *Direct Appeal* by filing a *notice of appeal*, as required by law, and in that sense was denied the effective assistance of counsel? The records fail to show any "Notice of Appeal" was filed, therefore, cannot be disputed. The landmark case which must be examined to determine whether or not the petitioner was afforded effective assistance of counsel is, Beasley v. United States, 491 F.2d 687 (1974); wherein the United States Court of Appeals for the (6th Cir) judge [sic] Celebreeze [sic] held:

"Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law, and must, conscientiously protect his client,s [sic] interest, undeflected by conflicting considerations, and defense counsel must investigate all apparently substantial defenses available to the defendant, and must assert them in the proper timely manner."

It is submitted that the trial counsel (J. Ewing Smith) has previously determined that he committed no errors, therefore, it was pointless to file any Notice of appeal? Such is not the function of any trial counsel, and violates the [sic] Due Process and Equal Protection, and also, that